ESTHER B. BOOKER, WIDOW AND GUARDIAN AD LITEM FOR ELIZA-BETH A. BOOKER, DANIEL LOYD BOOKER, DAVID WAYNE BOOKER AND MARTHA JANE BOOKER, MINOR CHILDREN OF ROBERT S. BOOKER, DECEASED, EMPLOYEE v. DUKE MEDICAL CENTER, EMPLOYER AND GLENS FALLS INSURANCE COMPANY, CARRIER

No. 7614IC461

(Filed 19 January 1977)

1. **Master and Servant § 68— occupational disease — applicable statute**

    In an action to recover death benefits for the widow and minor children of an employee of defendant who died as a result of serum hepatitis, the version of G.S. 97-53(13) which was in effect during the first six months of 1971, the time during which the employee contracted the disease, was applicable to this case.

2. **Master and Servant § 68— serum hepatitis — no occupational disease**

    The Industrial Commission erred in concluding that, under G.S. 97-53(13) as it existed during the first six months of 1971, serum hepatitis was an occupational disease, since an occupational disease is one which is caused by a series of events of a similar or like nature occurring regularly or at frequent intervals over an extended period of time, or the disease arises gradually from the character of the employee's work and as a result of the cumulative effect of a series of events, while serum hepatitis may be transmitted from person to person by one single event.

APPEAL by defendants from opinion and award of North Carolina Industrial Commission entered 20 January 1976. Heard in the Court of Appeals 13 October 1976.

This is a proceeding under the Workmen's Compensation Act to obtain death benefits for the widow and minor children of Robert S. Booker, who died 3 January 1974 as result of serum hepatitis. For more than six years prior to his death, Booker was employed in the Clinical Chemistry Laboratory at the Duke Medical Center, his employment being subject to the

Workmen's Compensation Act. During 1970 and 1971 his duties as a laboratory technician involved testing blood serum from blood samples taken from hospital patients. In removing the rubber stoppers from the blood sample tubes, he frequently got small amounts of blood on his fingers. Some of these blood samples were from patients suffering from hepatitis, but this was not always known and the samples were not always so labeled. In the opinion of Mr. Booker's supervisor, more than one sample passing through the Laboratory each day contained the hepatitis associated antigen.

The major route of transmission of serum hepatitis is by contact of blood or blood products from a person suffering with or carrying the disease through some point of entry, such as a break in the skin or by direct injection, into another person's body. Only one such exposure to a very small amount of contaminated blood is required to transmit the disease. The incubation period is from six weeks to six months.

On 4 July 1971 Mr. Booker was diagnosed as suffering from serum hepatitis. Until three or four days prior thereto he had been totally asymptomatic. He suffered from serum hepatitis continuously from the time he contracted it until his death resulted from the disease on 3 January 1974. However, he continued to work at the Duke Medical Center Laboratory until 1 October 1973, when he became totally disabled. At the time of his death, one hearing had been held on 18 October 1973, before a Hearing Commissioner of the North Carolina Industrial Commission on Mr. Booker's claim for benefits under the Workmen's Compensation Act, and a further hearing had been scheduled. Mr. Booker's death occurred before the further hearing could be held on his claim.

On 16 December 1974 the present claim was filed by his widow and minor children. Hearing was held on this claim on 10 September 1975. The Hearing Commissioner found, among other facts, that at some time between December 1970 and May 1971, Booker contracted serum hepatitis "due to exposure to hepatic blood in his employment," that "[t]he general public is not as exposed to this disease as is a laboratory technician," and that "[s]aid occupational disease resulted in his death." The Hearing Commissioner awarded claimants compensation at the rate of $50.00 per week for 350 weeks beginning 4 January 1974. On appeal, the Full Commission adopted as its own the

opinion and award of the Hearing Commissioner, with the exception that it increased the amount of the weekly payments from $50.00 to $80.00. The Full Commission made this increase on the basis of its conclusion of law that "[t]he rights and liabilities of the parties to this action are governed by the statute as it existed" at the date of Mr. Booker's death, thereby making applicable to this case the amendments to the Workmen's Compensation Act effected by Sec. 4 of Ch. 515 of the 1973 Session Laws, which increased the maximum allowable weekly benefits in a death case to $80.00.

From the opinion and award made by the Full Commission, the employer and its carrier appealed.

*Dalton H. Loftin for appellees.*

*Newsom, Graham, Strayhorn, Hedrick, Murray & Bryson by Josiah S. Murray III and Robert B. Glenn, Jr., for defendant appellants.*

PARKER, Judge.

G.S. 97-2(6), which remains today as it was originally enacted when the North Carolina Workmen's Compensation Law was first adopted in 1929, provides:

"Injury.—'Injury and personal injury' shall mean only injury by accident arising out of and in the course of the employment, *and shall not include a disease in any form, except where it results naturally and unavoidably from the accident.*" (Emphasis added.)

In this case there was no finding, nor was there sufficient evidence from which the Industrial Commission could have made a finding, that Mr. Booker contracted serum hepatitis as a result of any accident. At the 18 October 1973 hearing, Booker testified:

"I do not know of any particular accident which has happened during my four year period of handling blood which was the cause of my suffering hepatitis. I do not know the day on which I contracted hepatitis nor do I know or have any specific knowledge as to how I did contract hepatitis.

I do not know of any particular accident which has happened during my tenure at Duke as a result of which I suffered this hepatitis.

I was not involved in any particular accident."

Mrs. Booker testified at the 10 September 1975 hearing that her husband liked to work in the garden and that he had hobbies "which would cause him from time to time to have the normal amount of scratches or abrasions or whatever about his hands." This testimony apparently furnished the basis for the Commission's findings of fact that "Booker's hobby was gardening, and as a gardner, from time to time he would nick or cut his fingers," and "[i]t was not unusual occasionally for him to work in the laboratory at Duke Medical Center with unhealed nicks or scratches on his hands." However, there was no finding that Booker actually had any such unhealed nicks or scratches at any time during the period when, according to all of the evidence, he contracted serum hepatitis. Nor was there evidence that blood of hospital patients, whether contaminated or otherwise, ever came in contact with Booker's fingers, scratched or unscratched, as a result of an "accident" as that word is generally understood. Indeed, Booker testified that his work brought him into contact with blood samples every day as a routine matter, and that he "would get small amounts of blood on [himself] from time to time as a regular and repeated and usual and frequent occurrence of [his] employment." An occurrence which is regular, repeated, usual, and frequent, can hardly be considered an "accident" within any generally accepted definition of that word. Certainly it cannot be so considered for purposes of the North Carolina Workmen's Compensation Act in view of the following express provision in G.S. 97-52:

"The word 'accident,' as used in the Workmen's Compensation Act, shall not be construed to mean a series of events in employment, of a similar or like nature, occurring regularly, continuously or at frequent intervals in the course of such employment, over extended periods of time, whether such events may or may not be attributable to fault of the employer and disease attributable to such causes shall be compensable only if culminating in an occupational disease mentioned in and compensable under this Article."

Therefore, since there was no finding, or evidence to support a finding, that any accident occurred from which the dis-

ease "naturally and unavoidably" resulted, the Industrial Commission necessarily based its award upon its conclusion that Booker died as a result of an "occupational disease." Thus, the crucial question presented by this appeal is whether that conclusion made by the Industrial Commission can be sustained under the pertinent provisions of our Workmen's Compensation Act. Decision of that question requires that we first determine what statutory provisions apply to this case.

By express language of our statute, only the disases and conditions enumerated in G.S. 97-53 shall be deemed to be occupational diseases within the meaning of our Workmen's Compensation Act. Serum hepatitis is not expressly listed by name and can be considered an occupational disease only if it is included in the general definition contained in subsection (13). That subsection, as amended by Ch. 965 of the 1963 Session Laws and as it was in effect during the first six months of 1971 when Mr. Booker contracted serum hepatitis, was as follows:

> "(13) Infection or inflammation of the skin, eyes, or other external contact surfaces or oral or nasal cavities or any other internal or external organ or organs of the body due to irritating oils, cutting compounds, chemical dust, liquids, fumes, gases or vapors, and any other materials or substances.

> The provisions of this subsection shall not apply to cases of occupational diseases not included in said subsection prior to the effective date of this Act unless the last exposure in an occupation subject to the hazards of such disease occurred on or after the effective date of this Act."

Effective 1 July 1971, and applying "only to cases originating on and after" that date, subsection (13) of G.S. 97-53 was amended to read as follows:

> "(13) Any disease, other than hearing loss covered in another subsection of this section, which is proven to be due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment, but excluding all ordinary diseases of life to which the general public is equally exposed outside of the employment."

[1]  Thus, at the threshold of our inquiry we are confronted with the necessity of determining which version of subsection (13) is applicable to this case. We hold that the version which was in effect when Mr. Booker contracted the disease, rather than the subsequently enacted version, applies for purposes of deciding this case. The 1971 Act was ratified on 14 June 1971, and the Legislature demonstrated a clear intention that it operate prospectively only by providing that it be effective from and after 1 July 1971 and "apply only to cases originating on and after" that date. For purposes of the Workmen's Compensation Act a case is normally considered as "originating" on the date when the accident giving rise to injury occurred or, in case of an occupational disease, when the disease is contracted. We believe this to be the construction intended by the Legislature in adopting the 1971 Act. To hold otherwise would be to provide *ex post facto* coverage for diseases contracted under conditions existing before the statute providing coverage was enacted. Accordingly, we shall apply the provisions of the 1963 rather than those of the 1971 Act in deciding this case. Our determination in this regard is supported by the decisions in *Arrington v. Engineering Corp.*, 264 N.C. 38, 140 S.E. 2d 759 (1965) and *McCrater v. Engineering Corp.*, 248 N.C. 707, 104 S.E. 2d 858 (1958) ; *see also* 81 Am. Jur. 2nd, Workmen's Compensation, § 89, pp. 772-73; Annot., 82 A.L.R. 1244 (1933).

We now turn to the crucial question presented by this appeal, whether the conclusion of the Industrial Commission that Booker died from an occupational disease can be sustained, applying for purposes of deciding that question the statute as it existed prior to 1 July 1971. Listed among the "Findings of Fact" made by the Hearing Commissioner, which were adopted as its own by the Full Commission, was the following:

"9. At sometime between December of 1970 and May of 1971, Booker contracted an infection of an internal organ of the body due to exposure to hepatic blood in his employment, the said disease being serum hepatitis. This disease is characteristic of the occupation of a laboratory worker such as Booker. The general public is not as exposed to this as is a laboratory technician. Said occupational disease resulted in his death on January 4 (sic) 1974."

The findings made in the second and third sentences above quoted are obviously relevant only if the 1971 amendment to

subsection (13) of G.S. 97-53 were applicable. Since we hold that amendment is not applicable, we may treat the findings made in the second and third sentences as surplusage, and we need not consider defendants' contentions that these findings were not supported by competent evidence. The findings made in the first sentence above quoted were, in our opinion, supported by competent evidence, and such findings are binding on this appeal. There is also no question that Booker died as a result of serum hepatitis, and the *factual* findings made in the last sentence are also supported by competent evidence (except for the immaterial error in the date of death, which the parties stipulated occurred on 3 January 1974). However, the characterization of the disease in the last sentence as an "occupational" disease was not a finding of fact but was merely the Commission's conclusion of law, the validity of which is the principle question presented by this appeal. In our opinion, and we so hold, the Commission committed error in making this conclusion.

It may be conceded that the first sentence of subsection (13) of G.S. 97-53, as that subsection was in effect prior to the 1971 amendment, if interpreted broadly and if viewed in isolation and apart from the remainder of the Workmen's Compensation Act, might support the Commission's conclusion. So interpreted, the Workmen's Compensation Act would become, in effect, a species of compulsory health insurance, insuring all employees against the hazard of any infectious or contagious disease contracted on his employer's premises during working hours. However, the first sentence of subsection (13) may not properly be viewed in isolation from the rest of the Workmen's Compensation Act. The heading of G.S. 97-53, in which subsection (13) appears, as well as the second sentence of subsection (13) itself, speaks of "occupational diseases." We reject the appellees' contention that the first sentence of subsection (13) is to be looked to alone as containing in itself a definition of that term; to accept that contention would, as above noted, convert our Workmen's Compensation Act into a species of broad scale compulsory health insurance, which we do not believe was the Legislature's intention. On the contrary, by including subsection (13) in G.S. 97-53, which provides that "[t]he following diseases and conditions only shall be deemed to be occupational diseases within the meaning of this Article," it is our opinion that the Legislature intended to provide coverage only

for diseases which, whether specifically named in other sub-sections or coming within the admittedly very broad language of subsection (13), would also come within well understood definitions of the term "occupational diseases." In this connection, Barnhill, J. (later C.J.), speaking for the Court in *Henry v. Leather Co.*, 234 N.C. 126, 66 S.E. 2d 693 (1951) said (at pp. 130-31):

> "The Legislature, in listing those diseases which are to be deemed occupational in character, was fully aware of the meaning of the term 'occupational disease.' Indeed, it in effect, defined the term in G.S. 97-52 as a diseased condition caused by a series of events, of a similar or like nature, occurring regularly or at frequent intervals over an extended period of time, in employment.
>
> The term has likewise been defined as a diseased condition arising gradually from the character of the employee's work. These are the accepted definitions of the term."

Further in the opinion in that case the court said (p. 131):

> " . . . [A]n occupational disease is a diseased or morbid condition which develops gradually, and is produced by a series of events in employment occurring over a period of time. *It is the cumulative effect of the series of events that causes the disease.*" (Emphasis added.)

[2]  Applying these definitions to the facts disclosed by the evidence in the present case, it is apparent that the serum hepatitis contracted by Booker was not an occupational disease. There was no evidence to show that serum hepatitis is a diseased condition "caused by a series of events, of a similar or like nature, occurring regularly or at frequent intervals over an extended period of time," or that it arises "gradually from the character of the employee's work" and as result of the cumulative effect of a series of events. On the contrary, all of the evidence shows that serum hepatitis may be transmitted from person to person by one single event. If that event can be shown and if it constituted an "accident" within the purview of the Workmen's Compensation Act, then coverage for the resulting disease is provided by G.S. 97-2(6), but if, as here, it is not possible to show any particular event constituting an accident from which the disease "naturally and unavoidable" resulted, coverage is not provided by that section.

(It is, of course, entirely possible that even a disease which is specifically listed by name as an occupational disease in G.S. 97-53 may, in particular circumstances, result from a single event constituting an accident. Under such circumstances, the disease, although specifically named in G.S. 97-53, would not be an occupational disease, but coverage would fall under G.S. 97-2(6). *Watkins v. Murrow,* 253 N.C. 652, 118 S.E. 2d 5 (1961) furnishes an example of such a situation.)

We recognize, of course, that in his employment Mr. Booker was exposed to a recurring hazard of contracting a disease which placed him in a position of risk greater than that to which members of the public are generally exposed. The same is true of many hospital employees. We hold only that under the statute as written when Mr. Booker contracted the disease, serum hepatitis could not properly be considered an occupational disease and the Industrial Commission erred in so concluding.

The opinion and award appealed from is

Reversed.

Judges BRITT and CLARK concur.