EULA WOOD, EMPLOYEE v. J. P. STEVENS & COMPANY, EMPLOYER, LIBERTY
MUTUAL INSURANCE COMPANY

No. 7710IC605

(Filed 6 June 1978)

**Master and Servant § 68— occupational disease—applicable statute—byssinosis
not occupational disease**

> G.S. 97-53(13) as it existed in 1958 when plaintiff was last exposed to the
> cotton dust which allegedly caused her disease of byssinosis must determine
> the rights and liabilities of the parties. Plaintiff's disease, diagnosed as
> byssinosis and described in the Industrial Commission's opinion as "an irrita-
> tion of the pulmonary air passages" is not included in the coverage by G.S.
> 97-53(13) of "infection or inflammation of . . . oral or nasal cavities," and it was
> not necessary for the Commission to admit expert testimony on the issue of
> whether "oral or nasal cavities" encompassed the "pulmonary air passage."

Judge Mitchell dissenting.

APPEAL by plaintiff from the opinion of the North Carolina
Industrial Commission entered 10 February 1977. Heard in the
Court of Appeals 25 April 1978.

This is a proceeding under the Workmen's Compensation Act
instituted by Eula Wood to recover for a disease allegedly con-
tracted in her employment with the defendant. In her claim for
compensation filed 5 December 1975, the plaintiff alleges that she
contracted byssinosis "prior to the 1st day of July, 1958, at
Roanoke Rapids, Halifax [County]"; that the disease was "caused
by regular exposure to cotton dust for approximately 48 years in
spinning area"; and that as a result of this disease she suffers
"permanent total disability from impairment of respiratory
pulmonary functions."

In response to the plaintiff's claim the defendants, her
employer and its insurance carrier, denied liability on the ground
that the alleged occupational disease was not covered by the
Workmen's Compensation Act as it existed at the time the
disease was contracted.

On 7 December 1976 the parties stipulated to the following:

> 1. The legal issue of coverage should be determined
> before proceeding with further medical examination or hear-
> ing for the purpose of presenting factual evidence in this
> cause;

. . .

4. At the time of the alleged contracting of the alleged occupational disease, the parties were subject to and bound by the provisions of the Workmen's Compensation Act.

5. The employer-employee relationship existed between plaintiff and defendant employer at that time.

After a hearing before the Deputy Commissioner, the plaintiff made a motion for leave to present further evidence relevant to the technical and medical definitions of certain terms in G.S. 97-53 as it appeared in 1958 in order to show that the plaintiff's alleged occupational disease was included therein. On 10 February 1977 the Commission filed an opinion in which it denied the plaintiff's motion and addressed the issue of whether byssinosis, the disease allegedly contracted by the plaintiff, is compensable under the Workmen's Compensation Act. On the basis of the stipulated facts, the Commission concluded that only occupational diseases enumerated in G.S. 97-53 are compensable; that byssinosis was not included in the statute at the time of the plaintiff's last exposure; and that, therefore, the plaintiff's disease is not compensable and her claim should be denied. The plaintiff appealed.

*Davis & Hassell, by Charles R. Hassell, Jr., for the plaintiff appellant.*

*Teague, Johnson, Patterson, Dilthey & Clay, by Dan M. Hartzog and George W. Dennis III, for the defendant appellees.*

HEDRICK, Judge.

Our initial inquiry must focus on the plaintiff's second assignment of error in which she contends that G.S. 97-53(13) as amended in 1971 is applicable to her claim for compensation under the Workmen's Compensation Act. A discussion of this assignment must begin with an examination of the relevant statutes.

The Workmen's Compensation Act, enacted in 1929 as Chapter 97 of the General Statutes, was originally designed to provide compensation for employees who incur injuries by accident in the normal course of their employment. *Henry v. Leather Co.*, 234 N.C. 126, 66 S.E. 2d 693 (1951). In its inception, the Act

did not provide coverage for any diseases contracted in employment except those which result "naturally and unavoidably from . . . [an] accident." G.S. 97-2(6). In 1935 our legislature, recognizing that employees who suffer from occupational diseases should logically receive the same benefits under the Act as those suffering from injuries, passed remedial legislation to achieve this objective. *See* G.S. 97-52 and G.S. 97-53 (1935). General Statute 97-52 declares that "[d]isablement or death of an employee resulting from an occupational disease described in G.S. 97-53 shall be treated as the happening of an injury by accident within the meaning of the North Carolina Workmen's Compensation Act." Thus, G.S. 97-53 contains the comprehensive list of occupational diseases for which compensation is provided in the Act. Conversely, unless the disease with which the plaintiff was allegedly afflicted as a result of her employment with the defendant is among those diseases listed, she is not entitled to compensation therefor under the Workmen's Compensation Act. The plaintiff seeks coverage on the basis of G.S. 97-53(13).

The evolution of G.S. 97-53(13) from the time of plaintiff's employment to the present is central to the arguments raised on this appeal. In 1958 when the plaintiff retired from her employment with defendant, Subsection 13 of G.S. 97-53 read as follows:

Infection or inflammation of the skin or eyes or other external contact surfaces or oral or nasal cavities due to irritating oils, cutting compounds, chemical dust, liquids, fumes, gases or vapors, and any other materials or substances.

In 1963 the statute was amended to provide:

Infection or inflammation of the skin, eyes, or other external contact surfaces or oral or nasal cavities or any other internal or external organ or organs of the body due to irritating oils, cutting compounds, chemical dust, liquids, fumes, gases or vapors, and any other materials or substances.

The provisions of this subdivision shall not apply to cases of occupational diseases not included in said subdivision prior to July 1, 1963, unless the last exposure in an occupation subject to the hazards of such disease occurred on or after July 1, 1963.

Presently, as a result of its amendment in 1971, Subsection 13 reads as follows:

> Any disease, other than hearing loss covered in another subdivision of this section, which is proven to be due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment, but excluding all ordinary diseases of life to which the general public is equally exposed outside of the employment.

The Session Laws in which the 1971 amendment was enacted include a proviso that the amendment is applicable "only to cases originating on and after July 1, 1971." 1971 N.C. Sess. Laws, ch. 547, § 3.

The plaintiff argues that since her condition was not diagnosed and her claim was not filed until 1975, then her case originated after the effective date of the 1971 amendment. Thus, she concludes the terms of the more expansive present version of G.S. 97-53(13), which manifestly includes her disease, are applicable to her claim. A similar contention was recently answered by this Court in *Booker v. Duke Medical Center*, 32 N.C. App. 185, 231 S.E. 2d 187, *cert. allowed*, 292 N.C. 466, 233 S.E. 2d 921 (1977). In that case the plaintiffs, widow and children of Robert S. Booker, filed a claim on 16 December 1974 based on his death from an alleged occupational disease, serum hepatitis, on 3 January 1974. The evidence tended to show that Booker had been employed as a laboratory technician whose duties included testing blood samples taken from hospital patients. Apparently, the disease was transmitted from a blood sample of an afflicted patient through an abrasion on the decedent's finger. Booker's condition was diagnosed on 4 July 1971. On the basis of this evidence the plaintiffs were granted an award by the Commission. On appeal Judge Parker, speaking for this Court, noted as a preliminary matter that it was necessary to determine whether G.S. 97-53(13) was applicable in the form in which it appeared prior to the 1971 amendment or thereafter. Judge Parker wrote as follows:

> We hold that the version which was in effect when Mr. Booker contracted the disease, rather than the subsequently enacted version, applies for purposes of deciding this case. The 1971 Act was ratified on 14 June 1971, and the Legislature demonstrated a clear intention that it operate

prospectively only by providing that it be effective from and after 1 July 1971 and "apply only to cases originating on and after" that date. For purposes of the Workmen's Compensation Act a case is normally considered as "originating" on the date when the accident giving rise to injury occurred or, in case of an occupational disease, when the disease is contracted. We believe this to be the construction intended by the Legislature in adopting the 1971 Act. To hold otherwise would be to provide *ex post facto* coverage for diseases contracted under conditions existing before the statute providing coverage was enacted. Accordingly, we shall apply the provisions of the 1963 rather than those of the 1971 Act in deciding this case. [Citations omitted.]

32 N.C. App. at 190, 231 S.E. 2d at 191. We think it is clear that the proviso setting the effective date of the 1971 amendment refers to the date on which the disease was contracted and not to the date on which the claim was filed. This conclusion is particularly appropriate in view of the amendments which spanned the interval between the date the plaintiff retired and the date her disease was diagnosed. The proviso to the 1963 amendment stated in unequivocal terms that the date of the last exposure to the disease determines the applicability of the amendment. Since the 1963 amendment could in no event have applied to plaintiff's claim, it follows that the 1971 amendment was not intended by the legislature to apply.

The plaintiff cites several cases from other jurisdictions as support of her argument that her case originated after the effective date of the 1971 amendment. *See American Bridge Division, U.S. Steel Corp. v. McClung,* 206 Tenn. 317, 333 S.W. 2d 557 (1960); *Greener v. DuPont,* 188 Tenn. 303, 219 S.W. 2d 185 (1949); *Kress v. Minneapolis-Moline Co.,* 258 Minn. 1, 102 N.W. 2d 497 (1960); *Peak v. State Compensation Commissioner,* 91 S.E. 2d 625 (W.Va. 1956); *Sizemore v. State Compensation Commissioner,* 219 S.E. 2d 912 (W.Va. 1975). We have carefully examined all of these authorities and find that in each case with the exception of the West Virginia cases the plaintiff had been employed subsequent to the effective date of the amendment expanding coverage. Thus, in each case the plaintiff's last exposure to the disease contracted was after the legislature had amended the statute. In the West Virginia cases the court drew a distinction between workmen's

Wood v. Stevens & Co.

compensation claims filed by the employee himself and those filed by his survivors and held that in the latter case the statute as it appeared on the date of death of the employee determines coverage. *Sizemore v. State Compensation Commissioner, supra.*

In *Booker* our Court clearly aligned North Carolina with the majority view which makes no such distinction and in either case looks to the laws as of the date of the accident or the date the disease was contracted by the employee. We hold that G.S. 97-53(13) as it existed in 1958 when the plaintiff was last exposed to the cotton dust which allegedly caused her disease of byssinosis must determine the rights and liabilities of the parties.

By her second assignment of error the plaintiff contends that her claim is compensable under the 1958 version of the statute. In this regard she argues that an interpretation of G.S. 97-53(13) should be based upon "expert medical testimony." Specifically, plaintiff argues that her disease, diagnosed as byssinosis and described in the Commission's opinion as "an irritation of the pulmonary air passages" is included in the coverage by G.S. 97-53(13) of "[i]nfection or inflammation of . . . oral or nasal cavities."

In defining the terms in a statute, it is the primary duty of the courts to discern the intent of the legislature in its employment of such words. *Greensboro v. Smith*, 241 N.C. 363, 85 S.E. 2d 292 (1955). To this end, words in a statute will ordinarily be defined according to their "natural, approved, and recognized meaning." *Cab Co. v. Charlotte*, 234 N.C. 572, 68 S.E. 2d 433 (1951).

The plaintiff relies upon *Henry v. Leather Co.*, 234 N.C. 126, 66 S.E. 2d 693 (1951), for the proposition that technical words can only be interpreted with reference to expert testimony. In *Henry* a claim was filed by the plaintiff seeking workmen's compensation for a disease which he allegedly contracted as a result of his employment. The plaintiff claimed to suffer from "[t]enosynovitis, caused by trauma in employment," covered by G.S. 97-53(21). On appeal the defendants argued that there was no evidence to support the finding of the Commission that the disease was caused by trauma. The Supreme Court in discussing the meaning of "trauma" pointed out that technical words used in a statute

should be interpreted according to their technical meanings. The court then deduced a definition of the term from medical treatises, dictionaries, and expert testimony.

Undoubtedly, the terms here in controversy take on some technical connotations when used in a medical context. However, it does not follow that it is necessary in every case to resort to expert testimony to decipher their meanings. It is true that a medical word may be so highly technical in a certain usage that only one trained in the profession is qualified to ascertain its meaning. On the other hand, the same word used in another context may be susceptible of lay understanding. For example, while medical authority may be indispensable in determining the technical meaning of "foot" and its precise anatomical dimensions, it would not be necessary to support the conclusion that the foot does not encompass the knee. Thus, while the court in *Henry* stated that technical words should be construed in accordance with their technical connotations, it did not extend this rule to require the courts to rely on expert testimony in every case.

In the present case it is necessary to determine whether "an irritation of the pulmonary air passage" is encompassed by the terms "[i]nfection or inflammation of . . . oral or nasal cavities." While we can conceive of contexts in which the meanings of these terms might prove elusive to the untrained mind, we think that our determination in this case is clearly guided by the definitions of the words involved.

According to Webster's Third New International Dictionary 1585 (unabr. 1967), "oral" means "of, relating to, or belonging to the mouth." Within the definition of "mouth" we find it described as "the cavity bounded externally by the lips or jaws and internally by the pharynx or gullet that encloses in the typical vertebrate the tongue, gums, and teeth." Webster's, *supra* at 1479. "Nasal cavity" is defined as "the vaulted chamber that lies between the floor of the cranium and the roof of the mouth of higher vertebrates extending from the external nares to the pharynx." Webster's, *supra* at 1504. Finally "pulmonary" means "of, relating to, or associated with the lungs." Webster's, *supra* at 1840.

In view of these definitions and according to common understanding, it is inconceivable to us that any physical descrip-

---

McAdams v. Insurance Co.

---

tion of oral or nasal cavities could include the lungs. In our opinion it was not necessary for the Industrial Commission to admit expert testimony on the issue of whether "oral or nasal cavities" encompass the "pulmonary air passage." Thus, we hold that the plaintiff's alleged disease of byssinosis was not compensable under G.S. 97-53(13) in its 1958 form.

The order appealed from is affirmed.

Affirmed.

Chief Judge BROCK concurs.

Judge MITCHELL dissents.

Judge MITCHELL dissenting.

I find the intent of the General Assembly in making the 1971 amendment to G.S. 97-53(13) applicable "only to cases originating on and after July 1, 1971" to be less than clear. More importantly, however, I would hold that "pulmonary air passages" include the "oral or nasal cavities" which come within the coverage provided by the statute in 1958. In order for air to reach the lungs, it must pass through either the oral or nasal cavities and, thereby, employ them as pulmonary air passages. Courts consistently favor such liberal constructions of the provisions of the Workmen's Compensation Act in favor of claimants. *Petty v. Transport, Inc.*, 276 N.C. 417, 173 S.E. 2d 321 (1970). Therefore, I respectfully dissent from the opinion of the majority.