EULA WOOD, Employee, Plaintiff v. J. P. STEVENS & COMPANY, Employer, LIBERTY MUTUAL INSURANCE CO., Defendants

No. 62

(Filed 30 July 1979)

1. Master and Servant § 68— workmen's compensation—occupational disease

In determining whether a given illness falls within the general definition of occupational disease set out in G.S. 97-53(13), the Industrial Commission must determine first the nature of the disease from which plaintiff is suffering—that is, its characteristics, symptoms and manifestations, and then the Commission must decide if the illness plaintiff has contracted falls within the statutory definition.

Wood v. Stevens & Co.

2. **Master and Servant § 68— workmen's compensation—characteristics of byssinosis—judicial notice improper**

The Industrial Commission erred in assuming that byssinosis was "an irritation of the pulmonary air passages" without hearing evidence and making findings of fact, since the causes and development of byssinosis and the structural and functional changes produced by the disease are still the subject of scientific debate; the N.C. Supreme Court has never considered a case involving byssinosis; and, under the circumstances, judicial notice as to the essential characteristics of the disease is inappropriate.

3. **Statutes § 5.11— technical term in statute—expert opinion evidence admissible**

While the construction of a statute is ultimately a question of law for the courts, expert opinion testimony as to the meaning of technical terms used in a statute is clearly competent.

4. **Master and Servant § 68— workmen's compensation—occupational disease—time of disablement**

The current version of G.S. 97-53(13) defining occupational disease applies to all claims for disablement in which the disability occurs after the statute's effective date, 1 July 1971.

5. **Master and Servant § 68— workmen's compensation—occupational disease—law in effect at time of disablement**

An employee's right to compensation in cases of occupational disease should be governed by the law in effect at the time of disablement.

6. **Master and Servant § 47— workmen's compensation—no contract**

The rights of an injured employee under the Workmen's Compensation Act are governed by statute and are not contractual in the usual sense of that term.

7. **Statutes § 8— retroactive effect—test**

A statute is not unconstitutionally retroactive merely because it operates on facts which were in existence before its enactment; instead, a statute is impermissibly retrospective only when it interferes with rights which had vested or liabilities which had accrued prior to its passage.

8. **Statutes § 8; Master and Servant § 68— workmen's compensation—occupational disease—law in effect at time of disablement—no retroactive application**

Since an employee has no right to claim compensation in occupational disease cases until disablement occurs and the employer is exposed to no liability until that date, then applying the law in effect at the time of disablement to a claim arising from that disablement does not involve a retroactive application of the law.

9. **Master and Servant § 94.1— workmen's compensation—byssinosis—time of disablement—finding required**

Where plaintiff alleged that she was disabled by byssinosis after the effective date of the present version of G.S. 97-53(13), it became incumbent upon

the Industrial Commission to determine when plaintiff became disabled before it decided which law applied to her claim.

Justice BROCK took no part in the consideration or decision of this case.

APPEAL by plaintiff under G.S. 7A-30 from the Court of Appeals decision, reported in 36 N.C. App. 456, 245 S.E. 2d 82 (1978), which affirmed the North Carolina Industrial Commission's opinion entered 10 February 1977. This case was docketed and argued as Case No. 48 at the Fall Term 1978.

Eula Wood, plaintiff, instituted this action under the Workmen's Compensation Act to recover for a disease allegedly contracted in her employment with J. P. Stevens. In her claim for compensation (NCIC Form 18), filed 5 December 1975, Miss Wood alleges that she contracted byssinosis "prior to the 1st day of July, 1958, at Roanoke Rapids, Halifax [County]"; that the disease was "caused by regular exposure to cotton dust for approximately 48 years in spinning area"; and that as a result of this disease she suffered "permanent total disability from impairment of respiratory pulmonary functions" beginning November 12, 1975. Her doctor filled out page 2 of NCIC form B-1 and stated that it was his diagnostic impression that plaintiff was suffering from "byssinosis Grade III [and] chronic bronchitis in a non-smoker."

In response to plaintiff's claim the defendants (her employer and its insurance carrier) denied liability on the ground that the alleged occupational disease was not covered by the Workmen's Compensation Act as it existed at the time the disease was contracted.

At the hearing before Deputy Commissioner Denson on 7 December 1976 the parties stipulated to the following:

"1. The legal issue of coverage should be determined before proceeding with further medical examination or hearing for the purpose of presenting factual evidence in this cause. . . .

"3. This cause shall hereafter be treated as a motion to dismiss under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure.

"4. At the time of the alleged contracting of the alleged occupational disease, the parties were subject to and bound by the provisions of the Workmen's Compensation Act.

"5. The employer-employee relationship existed between plaintiff and defendant employer at that time."

In accordance with the stipulation no evidence was introduced in the case and Deputy Commissioner Denson heard the matter on a motion to dismiss for failure to state a claim upon which relief can be granted. In her opinion she took judicial notice that "byssinosis is an irritation of the pulmonary air passages caused by the inhalation of cotton dust" and held that it was not a compensable occupational disease covered by G.S. 97-53 as it appeared in 1958. She therefore denied plaintiff's claim.

Plaintiff appealed to the full Commission from the denial of her claim and moved the Commission for leave to present expert medical testimony as to the meaning of the term "oral or nasal cavities" as used in the 1958 version of G.S. 97-53. Plaintiff alleged that "there are expert witnesses available from the field of pulmonary medicine who are of the opinion that a definition of 'oral or nasal cavities' includes pulmonary air passages and lungs when those words are assigned their normal meaning as used in the field."

On 10 February 1977 the full Commission filed an "opinion and award" in which it denied plaintiff's motion and affirmed the ruling of Deputy Commissioner Denson. Plaintiff appealed to the Court of Appeals. In an opinion written by Judge Hedrick, Judge Brock concurring, the Court of Appeals affirmed the full Commission. Judge Mitchell having dissented, plaintiff appealed as a matter of right to this Court.

*Davis & Hassell by Charles R. Hassell, Jr., for plaintiff appellant.*

*Teague, Johnson, Patterson, Dilthey & Clay by Dan M. Hartzog and George W. Dennis III for defendant appellees.*

SHARP, Chief Justice.

The Industrial Commission concluded as a matter of law (1) that plaintiff's claim was governed by the law in effect in 1958 and (2) that in 1958 byssinosis was not compensable as an occupational disease under G.S. 97-53(13). The Commission heard no evidence but based its decision solely on the stipulations of the

parties and information contained in the forms filed by plaintiff for workmen's compensation benefits. The Court of Appeals affirmed the dismissal. 36 N.C. App. 456, 245 S.E. 2d 82 (1978).

For the reasons which follow we conclude that the Commission's findings of fact are insufficient to enable the Court to determine the rights of the parties. The case must therefore be remanded for further findings of fact in the light of the legal principles enunciated in this opinion. *Thomason v. Cab Co.*, 235 N.C. 602, 70 S.E. 2d 706 (1952); *Stanley v. Hyman-Michaels Co.*, 222 N.C. 257, 22 S.E. 2d 570 (1942); *Farmer v. Lumber Co.*, 217 N.C. 158, 7 S.E. 2d 376 (1940).

In denying plaintiff's claim the Deputy Commissioner concluded that "byssinosis was not an occupational disease mentioned in and covered by the Workmen's Compensation Act" as it existed in 1958. The Commissioner explained in an accompanying opinion that byssinosis was "an irritation of the pulmonary air passages" and therefore did not fall within the scope of the 1958 statute which provided compensation for "[i]nfection or inflammation of the . . . oral or nasal cavities." Both the full Commission and the Court of Appeals affirmed.

Assuming, *arguendo*, that it is the 1958 version of G.S. 97-53(13) which controls this case, an issue which we will discuss subsequently, nevertheless we believe that it was error for the Commission to dismiss plaintiff's claim without hearing evidence or making findings of fact.

[1] Whether a given illness falls within the general difinition set out in G.S. 97-53(13) presents a mixed question of fact and law. The Commission must determine first the nature of the disease from which the plaintiff is suffering—that is, its characteristics, symptoms and manifestations. Ordinarily, such findings will be based on expert medical testimony. Having made appropriate findings of fact, the next question the Commission must answer is whether or not the illness plaintiff has contracted falls within the definition set out in the statute. This latter judgment requires a conclusion of law.

[2] In this case, instead of hearing evidence and making findings of fact as to the nature of claimant's illness, the Commission simply assumed that "byssinosis is an irritation of the pulmonary

air passages." This assumption was proper only if the nature of byssinosis is subject to judicial notice, that is, if the characteristics of the disease are "either so notoriously true as not to be the subject of reasonable dispute or [are] capable of demonstration by resort to readily accessible sources of indisputable accuracy." *Kennedy v. Parrott,* 243 N.C. 355, 358, 90 S.E. 2d 754, 756 (1956). While it is clear that judicial notice can be used in rulings on demurrers or motions to dismiss for failure to state a claim, we do not think it is appropriate in this case.

The causes and development of byssinosis, and the structural and functional changes produced by the disease, are still the subject of scientific debate.[1] This Court has never before considered a case involving byssinosis, and our research discloses only a handful of such cases from other jurisdictions. Under these circumstances judicial notice as to the essential characteristics of the disease is inappropriate. In the absence of evidence or judicial notice, the Commission's legal conclusion that plaintiff's illness was noncompensable cannot stand. It may be that the Court of Appeals and the Industrial Commission are entirely correct in their conclusions as to the characteristics and nature of byssinosis. We simply do not know and are not convinced that knowledge of this disease is so notorious as to justify judicial notice.

We recognize that it might be appropriate for the Commission to dismiss a claim without hearing evidence or making findings of fact when the claim on its face discloses an absolute bar to recovery or shows to a certainty that claimant is entitled to no relief under any state of facts which could be proved in support of the claim. Such circumstances are not present here.

Plaintiff also contends that the Commission erred in denying her "motion for leave to present further evidence." In that motion, which was filed before the full Commission, plaintiff alleged that there were "expert witnesses available from the field of pulmonary medicine who are of the opinion that a definition of

---

1. 5A Lawyers' Medical Cyclopedia of Personal Injuries and Allied Specialties § 33.59a (1972 & 1976 Supp.); Bouhuys, Schoenberg, Beck and Schilling, *Epidemiology of Chronic Lung Disease in a Cotton Mill Community,* in 5 Traumatic Medicine and Surgery for the Attorney 607 (Service Vol. 1978); Dickie and Chosy, *Some Important Occupational Diseases,* in 3 Traumatic Medicine and Surgery for the Attorney 729, 742 (Service Vol. 1975).

'oral or nasal cavities' includes pulmonary air passages and lungs when those words are assigned their normal meaning as used in the field."

[3] Because this testimony was offered on a motion to present new or additional evidence, the decision whether to hear the testimony was one addressed to the discretion of the Commission. *Hall v. Chevrolet Co.,* 263 N.C. 569, 139 S.E. 2d 857 (1965); G.S. 97-85. However, because the case must be remanded for a hearing de novo, we note that, while the construction of a statute is ultimately a question of law for the courts, expert opinion testimony as to the meaning of technical terms used in a statute is clearly competent. *Order of Railway Conductors v. Swan,* 329 U.S. 520, 525, 91 L.Ed. 471, 476, 67 S.Ct. 405, 408 (1947); *Satterley v. City of Flint,* 373 Mich. 102, 111, 128 N.W. 2d 508, 513 (1964); *Southern Pacific Co. v. Brown,* 207 Or. 222, 231, 295 P. 2d 861, 865 (1956). "Expert testimony may be received as an aid to proper interpretation if the statute or rule (a) used technical terms not generally understood . . .; or (b) is ambiguous or indefinite." *Hillman v. Northern Wasco County People's Utility District,* 213 Or. 264, 297, 323 P. 2d 664, 680 (1958). *See also Henry v. Leather Co.,* 234 N.C. 126, 66 S.E. 2d 693 (1951) in which this Court based its construction of the term "tenosynovitis caused by trauma" on both medical treatises and expert testimony presented to the Commission. 234 N.C. at 130, 66 S.E. 2d at 696.

We also disagree with the Industrial Commission's conclusion that it is necessarily the 1958 version of G.S. 97-53(13) which governs this case. In 1958 when plaintiff left her employment as a spinner with J. P. Stevens the statutory definition of occupational disease set out in G.S. 97-53 included the following:

"Infection or inflammation of the skin or eyes or other external contact surfaces or oral or nasal cavities due to irritating oils, cutting compounds, chemical dust, liquids, fumes, gases or vapors, and any other materials or substances." 1935 N.C. Pub. Laws ch. 123, *as amended by* 1957 N.C. Sess. Laws ch. 1396, § 6.

In 1963 the statute was amended to include infections or inflammations of "any other internal or external organ or organs of the body" caused by exposure to one of the above-named substances. 1963 N.C. Sess. Laws ch. 965, § 1. This amendment applied only to cases in which "the last exposure in an occupation

subject to the hazards of such disease occurred on or after" July 1, 1963. *Id.* Because plaintiff retired from her position with J. P. Stevens in 1958, this amendment is manifestly inapplicable to her claim.

In 1971 G.S. 97-53(13) was amended again. It now reads as follows:

"Any disease, other than hearing loss covered in another subdivision of this section, which is proven to be due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment, but excluding all ordinary diseases of life to which the general public is equally exposed outside of the employment."

Unlike the 1963 amendment this addition to the Act was not limited to cases in which the "last exposure" to the hazards of the disease occurred after its effective date. Instead, the amendment expressly applies to all "cases originating on and after July 1, 1971." 1971 N.C. Sess. Laws ch. 547, § 3.

Citing its decision in *Booker v. Medical Center*, 32 N.C. App. 185, 231 S.E. 2d 187 (1977), *rev'd*, 297 N.C. 458, 256 S.E. 2d 189 (1979), the Court of Appeals held the 1971 amendment inapplicable on the grounds that a case "originates" within the meaning of the statute when an employee "contracts" the disease. Because plaintiff retired from her job in 1958, the Court reasoned that she must have "contracted" the disease prior to 1 July 1971. Having concluded that neither the 1963 nor the 1971 amendments applied to plaintiff's claim, the Court of Appeals then held that the claim was governed by the law "as it existed in 1958 when the plaintiff was last exposed to the cotton dust which allegedly caused her disease." 36 N.C. App. at 461, 245 S.E. 2d at 86. For the reasons which follow we hold this interpretation of the statute to be incorrect.

Nothing else appearing, the legislature is presumed to have used the words of a statute to convey their natural and ordinary meaning. *In re Trucking Co.*, 281 N.C. 242, 188 S.E. 2d 452 (1972); *State v. Wiggins*, 272 N.C. 147, 158 S.E. 2d 37 (1967), *cert. denied*, 390 U.S. 1028, 20 L.Ed. 2d 285, 88 S.Ct. 1418 (1968). A "case" is defined by Black's Law Dictionary (rev. 4th ed. 1968) as a "general term for an action, cause, suit, or controversy, at law or

in equity; . . . an aggregate of facts which furnishes occasion for the exercise of the jurisdiction of a court of justice." In the ordinary understanding of that phrase a case "originates" when the cause of action arises. *Booker v. Medical Center*, 297 N.C. 458, 256 S.E. 2d 189 (1979).

[4]   Under our Workmen's Compensation Act injury resulting from occupational disease is compensable only when it leads to disablement. G.S. 97-52. Until that time the employee has no cause of action and the employer had no liability. We hold therefore that the current version of G.S. 97-53(13) applies to all claims for disablement in which the disability occurs after the statute's effective date, 1 July 1971.

[5]   This holding is consistent with the statutory scheme for occupational diseases established by G.S. 97-52. That statute provides for "[d]isablement or death of an employee resulting from an occupational disease described in G.S. 97-53 [to] be treated as the happening of an injury by accident." The long-standing rule in both this and other jurisdictions is that the right to compensation in cases of *accidental* injury is governed by the law in effect at the time of injury. *Arrington v. Engineering Corp.*, 264 N.C. 38, 140 S.E. 2d 759 (1965); *Oaks v. Mills Corp.*, 249 N.C. 285, 106 S.E. 2d 202 (1958); *McCrater v. Engineering Corp.*, 248 N.C. 707, 104 S.E. 2d 858 (1958). *See also* 82 Am. Jur. 2d *Workmen's Compensation* § 346 (1976); 99 C.J.S. *Workmen's Compensation* § 21 (1958 & Cum. Supp. 1979). If disablement resulting from an occupational disease is treated as an injury by accident as required by G.S. 97-52, it follows that the employee's right to compensation in cases of occupational disease should be governed by the law in effect at the time of disablement. *See McCann v. Walsh Construction Co.*, 282 App. Div. 444, 123 N.Y.S. 2d 509 (1953), *aff'd*, 306 N.Y. 904, 119 N.E. 2d 596 (1954); *McIntyre v. E. J. Lavino & Co.*, 344 Pa. 163, 25 A. 2d 163 (1942) where similar statutes were construed to identical effect.

In his comprehensive treatise on workmen's compensation, Professor Larson cites the date of disablement as providing the most workable solution to the difficult problem of determining which law to apply in cases of occupational disease:

"Occupational disease cases typically show a long history of exposure without actual disability, culminating in the enforced

cessation of work on a definite date. In the search for an identifiable instant in time which can perform such necessary functions as to start claim periods running, establish claimant's right to benefits, *determine which year's statute applies*, and fix the employer and insurer liable for compensation, the date of disability has been found the most satisfactory.

"Legally, it is the moment at which the right to benefits accrues; as to limitations, it is the moment at which in most instances the claimant ought to know he has a compensable claim and, as to successive insurers, it has the one cardinal merit of being definite, while such other possible dates as that of the actual contraction of the disease are usually not susceptible to positive demonstration." 4 A. Larson, Workmen's Compensation Law § 95.21 (1979) (Emphasis added).

G.S. 97-53 applies expressly to all causes of action arising after its effective date. Even in the absence of such a provision, however, we believe the better rule in cases involving occupational disease is to apply the law in effect at the time the employee becomes disabled, at least where the statute does not dictate a contrary result. Our decision in this regard is in accord with authority from other jurisdictions. *Dickow v. Workmen's Compensation Appeals Board*, 34 Cal. App. 3d 762, 109 Cal. Rptr. 317 (1973); *Argonaut Mining Co. v. Industrial Accident Commission*, 104 Cal. App. 2d 27, 230 P. 2d 637 (1951); *Frisbie v. Sunshine Mining Co.*, 93 Idaho 169, 457 P. 2d 408 (1969); *Hirst v. Chevrolet Muncie Division of General Motors Corp.*, 110 Ind. App. 22, 33 N.E. 2d 773 (1941); *Ross v. Oxford Paper Co.*, 363 A. 2d 712 (Me. 1976); *Moore's Case*, 362 Mass. 876, 289 N.E. 2d 862 (1972); *Biglioli v. Durotest Corp.*, 26 N.J. 33, 138 A. 2d 529 (1958); *Rogala v. John Deere Plow Co.*, 31 App. Div. 2d 867, 297 N.Y.S. 2d 877 (1969); *McCann v. Walsh Construction Co.*, 282 App. Div. 444, 123 N.Y.S. 2d 509 (1953), *aff'd*, 306 N.Y. 904, 119 N.E. 2d 596 (1954); *McIntyre v. E. J. Lavino & Co.*, 344 Pa. 163, 25 A. 2d 163 (1942); *Romano v. B. B. Greenberg Co.*, 108 R.I. 132, 273 A. 2d 315 (1971).

In *Frisbie v. Sunshine Mining Co., supra*, claimant had worked for respondent company from 1947 to 1954 as an underground miner. Upon learning in 1954 that claimant was suffering from grade three silicosis, respondent transferred him to surface work as a boiler tender and watchman. Claimant continued to work for

the company until 1966 when he was forced to quit by severe respiratory problems.

The workmen's compensation board found that claimant's last injurious exposure to silica dust was in 1954 and that he became totally disabled on March 11, 1966. The board denied appellant's claim for compensation on the ground that under the statute as it existed in 1954, disability in silicosis cases was compensable only if it followed within two years of claimant's last exposure. Appellant argued that the law in effect at the time of his disability should control and that his claim was therefore compensable since the two-year limitation contained in the earlier law had been deleted. On appeal the Idaho Supreme Court reversed the board's decision and held for claimant:

"It is our opinion that appellant's contention is correct. A law is not retroactive merely because part of the factual situation to which it is applied occurred prior to its enactment; rather, a law is retroactive only when it operates upon transactions which have been completed or upon rights which have been acquired or upon obligations which have existed prior to its passage. 2 Sutherland, Statutory Construction, § 2202, p. 117 (3d Ed. 1943); 82 C.J.S., *Statutes* § 412, p. 980. In cases such as the present, the right to compensation does not accrue and the rights of the parties do not become fixed until the occurrence of the event, in this case appellant's disability, which gives rise to a cause of action." 93 Idaho at 172, 457 P. 2d at 411.

In *McIntyre v. E. J. Lavino & Co., supra,* an employee of defendant company contracted manganese poisoning while operating a mill for drying ore. In September, 1937, he was transferred to defendant's chrome department and thereafter had no contact with manganese. He was discharged on 4 February 1938 and on the 24th became totally disabled. Defendant argued that the claim was not covered by the Occupational Disease Act because, by its terms, it did not go into effect until January 1, 1938, while the employee's last exposure to manganese dust was in September 1937. On appeal the Pennsylvania Supreme Court upheld the award:

"In the case of accidents compensable under the Workmen's Compensation Act, the accident and the damage resulting therefrom, the cause and the effect, are usually determinable im-

mediately and they are practically simultaneous. But, because in disability arising from an occupational disease, both cause and effect are protracted and a long interval is apt to elapse between the exposure and the disability, it becomes necessary to fix a point of time at which the injury which is the subject of compensation shall be deemed to arise and the right to compensation accrue. Accordingly the Occupational Disease Compensation Act of 1937 provides, section 3, that 'The date when the disability occurs from occupational disease shall be deemed to be the date of injury or accident.' Thus it makes the occurrence of the disability the event which constitutes the compensable injury, although the disability is necessarily preceded by an exposure and an occupational disease of which it is the culmination. Since the date when McIntyre's disability occurred was February 24, 1938, this was the time when a compensable injury occurred, and, it being subsequent to the effective date of the act, no retroactive construction of the statute is involved." (Citations omitted.) 344 Pa. at 166-67, 25 A. 2d at 164-65.

In both of the cases discussed above the claimant was still an employee of the defendant company at the time the law was amended, though not exposed to the particular hazard which caused his disease. The same result has been reached, however, in cases where the law was changed after the employee left his job but prior to his disability.

*McCann v. Walsh Construction Co., supra,* for example, involved a claim by an employee who had worked for various construction companies in jobs requiring exposure to compressed air. The last such exposure was from July to December, 1938. Thereafter he worked only intermittently. None of his subsequent jobs required him to work in compressed air.

On December 11, 1950, claimant became disabled by caisson's disease, an illness caused by working in compressed air. At the time claimant left his job in 1938 the workmen's compensation act allowed recovery only when disability occurred within 12 months after contraction of the disease. In 1946 the act was amended to exclude "compressed air illness" from the twelve-month limit. Despite the fact that claimant had left his job prior to the amendment, the court followed the general rule and applied the law in effect at the time of disability. Similar holdings can be found in *Dickow v. Workmen's Compensation Appeals Board, supra;*

*Argonaut Mining Co. v. Industrial Accident Commission, supra; McAllister v. Board of Education,* 79 N.J. Super. 249, 191 A. 2d 212 (1963), *aff'd,* 42 N.J. 56, 198 A. 2d 765 (1964); and *Rogala v. John Deere Plow Co., supra.*

Having construed the current version of G.S. 97-53(13) as applying to all cases in which disablement occurs after its effective date, the next question is whether there are any constitutional barriers to such a result.

Courts in a few jurisdictions have refused to apply the law in effect at the time of disability in cases where the statute granting recovery was enacted after the claimant terminated his employment. *See, e.g., Walker v. Johns-Mansville Products Corp.,* 311 So. 2d 506 (La. Ct. App. 1975); *Anderson v. Sunray Electric,* 173 Pa. Super. 566, 98 A. 2d 374 (1953). This result has been justified on the grounds that to hold otherwise would be to allow an impairment of contract. In *Anderson v. Sunray Electric, supra,* for example, the court stated:

"When an employer and employee accept the occupational disease legislation their relation, like that created by the workmen's compensation statutes, becomes contractual and their rights are to be determined under the applicable provisions of the existing law, which become part of the terms of employment. . . . But unless the claimant is employed by the employer at the time when the act or the amendment becomes effective the provisions thereof do not become a part of the terms of employment, and legislation enacted after the employment has ceased will not support a recovery of compensation . . . . To rule otherwise would unconstitutionally impair the vested rights of both the employer and employee in the contract of employment." (Citations omitted.) 173 Pa. Super. at 568-69, 98 A. 2d at 375.

[6] Although superficially appealing, this interpretation does not withstand close analysis. The Workmen's Compensation Act is often spoken of as being part of the employment contract.[2] However, the relationship between a covered employer and employee is clearly not contractual in the usual sense of that term.

---

2. *See, e.g., Horney v. Pool Co.,* 267 N.C. 521, 525, 148 S.E. 2d 554, 557-58 (1966).

Under traditional contract law the rights of the parties are fixed at the time the contract is entered. One would therefore expect a court following this theory to apply the law in effect at the time the employment contract begins. In cases of accidental injury, however, the well-established rule in this and other jurisdictions is that the claim is governed by the law in effect at the time of *injury*, despite the fact that the law may have changed radically between the formation of the contract and the date of injury.

Similarly, we note that our original Workmen's Compensation Act was made binding on all qualified employers and employees who failed to give notice of nonacceptance, despite the fact that their employment contracts may have antedated adoption of the act, G.S. 97-3, 97-5, and despite the fact that their contract may have expressly provided to the contrary. G.S. 97-6.

The liability of the employer under our Workmen's Compensation Act arises not from the individual employment contract but from the Act itself. This point was aptly expressed in *McAllister v. Board of Education, supra*:

"The courts have used the term 'contract' in workmen's compensation cases much as they have used that term when speaking of marriage 'contracts.' In employment, like in marriage the parties must agree to enter the relationship, but once they do the law dictates to them their rights and liabilities. And, as in marriage — within legal limitations having nothing to do with the impairment of contract — the law may change those rights and liabilities, not only at any time during the relationship but sometimes even after it has been terminated, as, for example, after the employee has stopped working for the employer because of an injury. . . .

"The net result of all this is that the workmen's compensation 'contract' includes everything that the Legislature and the courts say it shall include, whether added before or after the injury. It is therefore arguing in a circle to seek what the 'contract' includes and whether it has been impaired." 79 N.J. Super. at 259-60, 191 A. 2d at 217-18.

Similarly, in *Todeva v. Oliver Iron Mining Co.*, 232 Minn. 422, 428, 45 N.W. 2d 782, 787-88 (1951), the court had this to say:

"In determining the nature and scope of the right of a disabl-ed workman or of his dependents if he dies from a compensable injury, it is well to bear in mind that compensation acts are *sui generis*, and the rights and liablities created thereunder are to be given full force and effect according to their own unique status, although they may not fit into the timeworn grooves of other areas of the law. In a certain limited sense, the rights and liabilities arise out of contract, on the theory that the statute becomes a part of the contract of employment . . . but, strictly speaking, such rights and liabilities are created independently of any actual or implied contract and, pursuant to the police power, are imposed upon the employment status or relationship as a cost of industrial production." (Citations omitted.)

**[7]** The proper question for consideration is not whether the amendment affects some imagined obligation of contract but rather whether it interferes with vested rights and liabilities. As we observed in *Booker v. Medical Center*, a statute is not un-constitutionally retroactive merely because it operates on facts which were in existence before its enactment. 297 N.C. at 467, 256 S.E. 2d at 195. *See in accord, Frisbie v. Sunshine Mining Co.*, 93 Idaho 169, 457 P. 2d 408 (1969); *Tennessee Insurance Guaranty Association v. Pack*, 517 S.W. 2d 526 (Tenn. 1974); *Sizemore v. State Workmen's Compensation Commissioner*, 219 S.E. 2d 912 (W.Va. 1975). Instead, a statute is impermissibly retrospective on-ly when it interferes with rights which had vested or liabilities which had accrued prior to its passage. *Spencer v. Motor Co.*, 236 N.C. 239, 72 S.E. 2d 598 (1952); *Wilson v. Anderson*, 232 N.C. 212, 59 S.E. 2d 836 (1950); *B-C Remedy Co. v. Unemployment Compen-sation Commission*, 226 N.C. 52, 36 S.E. 2d 733 (1946).

**[8]** An employee has no right to claim compensation in occupa-tional disease cases until disablement occurs; and, until that date, the employer is exposed to no liability. Consequently, applying the law in effect at the time of disablement to a claim arising from that disablement does not involve a retroactive application of the law.

In all cases of occupational disease other than silicosis and asbestosis, "disablement" is equivalent to "disability" as defined in G.S. 97-2(9). *See* G.S. 97-54. G.S. 97-2(9) defines "disability" to

Wood v. Stevens & Co.

mean "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." The term refers not to physical infirmity but to a diminished capacity to earn money. *Hall v. Chevrolet Co.*, 263 N.C. 569, 139 S.E. 2d 857 (1965); *Anderson v. Motor Co.*, 233 N.C. 372, 64 S.E. 2d 265 (1951).

Plaintiff alleged in her "Notice of Accident to Employer" that regular exposure to cotton dust while in J. P. Stevens' employ led to her "permanent total disability from impairment of respiratory pulmonary functions" on November 12, 1975.

[9] Given plaintiff's allegation that she was disabled after the effective date of the present version of G.S. 97-53(13), it became incumbent upon the Commission to determine when plaintiff became disabled before it decided which law applied to her claim. The Commission, however, heard no evidence on this point and made no factual determination as to the date of disablement. The case must therefore be remanded for a determination of that issue.

If the Commission finds that plaintiff became disabled after July 1, 1971, the effective date of current G.S. 97-53(13), it should determine her claim in accordance with that statute. If it finds that disablement occurred prior to July 1, 1971, then the 1958 version of the statute will control and the case should be determined in accordance with the principles set out in the first part of this opinion.

In summary, we hold that the Industrial Commission erred in dismissing plaintiff's claim without hearing evidence or making findings of fact and that both it and the Court of Appeals used the wrong test in determining the applicable law. We express no opinion as to either the merits or timeliness of her claim.

Reversed and remanded.

Justice BROCK took no part in the consideration or decision of this case.