The following were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. On June 22, 1990, the parties entered into a Form 21 Agreement, approved by the Industrial Commission on July 12, 1990, acknowledging that plaintiff incurred an occupational disease, namely asbestosis arising out of and in the course of his employment and related to causes and conditions of his employment. At the time plaintiff contracted this occupational disease, he was earning an average weekly wage of $427.83, which yields a compensation rate of $285.22. This Form 21 Agreement is incorporated into the record of this hearing.
2. Subsequent to the hearing, the parties stipulated into the record the Form 18 filed by plaintiff on September 20, 1989 and the Form 28B dated March 17, 1993 indicating that defendant paid plaintiff 104 weeks of compensation from June 1, 1990 through May 31, 1992.
Based upon the competent credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was employed by defendant on June 1, 1961 as a farm hand. Plaintiff resigned his employment on August 31, 1966 and worked for a short period of time with Martin Oil Company in Kinston. Thereafter, plaintiff was re-employed by Caswell Center on November 16, 1966 as a farm hand, and he continued to work with Caswell Center until his retirement on May 31, 1987. During that period of time, plaintiff worked as a general utility man in plant operations as of February 1, 1973, a maintenance mechanic as of August 1, 1976, and a plumber as of May 1, 1980. Plaintiff was regularly exposed to asbestos in the course of his employment with Caswell Center.
2. Plaintiff first sought medical treatment with Dr. Roy N. Everett on July 29, 1986 when he presented complaining of tightness in the chest and severe coughing paroxysms whenever he attempted to do any work or activities and also complaining of a moderate amount of dyspnea. A chest x-ray showed bibasilar increased interstitial marking with some reticular nodular densities present. At an August 21, 1986 visit, Dr. Everett diagnosed plaintiff with paroxysmal atrial tachycardia and probable asbestosis. After a break of approximately two years, plaintiff again saw Dr. Everett on September 26, 1988, complaining of exertional chest discomfort. A chest X-ray was noted to show the previously discovered pulmonary fibrotic changes. Plaintiff underwent an artery bypass graft and valve replacement in November 1988. In June 1989, a CT scan revealed a pleural effusion in plaintiff's left lung. His pleural biopsies and thoracentesis were negative for malignancy and plaintiff's condition was felt to be a benign asbestos effusion.
3. Plaintiff filed his workers' compensation claim alleging the occupational disease of asbestosis on September 20, 1989. Subsequently, the Industrial Commission referred plaintiff to Dr. Allen Hayes for the first of three panel exams on April 11, 1990. Following Dr. Hayes' report approving the diagnosis of asbestosis, the parties entered into a Form 21 for payment of 104 weeks of benefits pursuant to N.C.G.S. § 97-61.5.
4. Plaintiff had his second panel exam on May 2, 1991 and his third panel exam on September 21, 1992.
5. Dr. Hayes opined by written report that it would be unusual for plaintiff to have a normal diffusing capacity, a reduced vital capacity, absent clubbing, and rales, and still have significant asbestosis. He further believed plaintiff's lung function tests were more compatible with mild obstructive lung disease, which presumably would have been caused by plaintiff's "former heavy cigarette smoking."
6. Plaintiff began smoking as a teenager, but completely quit smoking in October 1964 at the age of thirty-seven. He did not begin having any breathing problems until the mid 1980's, at which point he had been exposed to asbestos on the job for many years.
7. The Full Commission finds the following facts, based upon Dr. Everett's deposition and medical records:
 a. Dr. Everett is a pulmonary specialist with expertise in asbestos-related lung disease. At the time of his deposition, he had been treating plaintiff over a seven year period.
 b. Plaintiff has a mild air flow obstruction detected by his pulmonary function tests and also pulmonary fibrosis associated with his asbestosis, making two disorders in the same set of lungs.
 c. Plaintiff's biggest problem throughout Dr. Everett's treatment of him has been a sensation of dyspnea with exertion and severe coughing paroxysms.
 d. Plaintiff's ability to be employed in manual labor or "exertional-type activities," including his previous job as a plumber, is substantially limited by his asbestos-related disease.
 e. The asbestosis related pulmonary fibrosis from which plaintiff suffers causes a loss of elastic recoil in the lungs and thus makes a person work harder to breathe and can induce coughing.
 f. Plaintiff's diffusion capacity measurement would not take into account the increased work of his breathing.
 g. The damage to the interstitial area of plaintiff's lungs exists all the way across both lungs, based upon plaintiff's chest x-rays and CT scan.
 h. B-reader reports analyzing plaintiff's chest x-rays from 5/2/91 and 9/17/92 indicate a progression of the disease between these dates. Also, the fact that plaintiff developed an asbestos related effusion suggests a continuing process at work in his disease, which process is likely to continue and worsen for the remainder of plaintiff's life.
 i. Plaintiff has a substantial risk of developing carcinoma to the lung due to his asbestosis.
 j. Dr. Everett contradicted Dr. Hayes' opinion that plaintiff's primary physiologic component is that of airflow obstruction. Plaintiff's primary impairment is not airflow obstruction as described by Dr. Hayes. Plaintiff's primary impairment is his severe cough, totally unrelated to his mild airflow obstruction. It is not at all uncommon for people with interstitial lung disease, such as asbestosis, including those who have never smoked, to be tremendously limited simply by cough.
 k. The timing of plaintiff's symptoms indicates they are more likely related to his asbestos exposure than to his cigarette smoking. His symptoms occurred more than twenty years after he stopped smoking. His symptoms are more reasonably explained by asbestosis, which is a progressive disease usually occurring twenty to thirty years after exposure to asbestos.
8. Both plaintiff and his treating physician testified that plaintiff's primary impairment is his cough and the Commission finds this assessment to be credible. Although Dr. Hayes felt that plaintiff's primary physiologic impairment is his mild airflow obstruction, he did not link plaintiff's cough to his mild airflow obstruction. In fact, he did not address the cause of plaintiff's cough at all. Dr. Everett, on the other hand, explicitly linked plaintiff's cough to his pulmonary fibrosis, which was caused by his exposure to asbestos.
9. Although Dr. Hayes felt that plaintiff's lung function tests are more compatible with mild obstructive lung disease, Dr. Everett pointed out that plaintiff's coughing may not have been accounted for in his lung function test results. Dr. Everett also opined, and the Full Commission finds as a fact, that plaintiff's diffusing capacity results, which Dr. Hayes found to be normal and used as evidence that he is not limited by asbestosis, would not take into account the loss of elastic recoil in plaintiff's lungs with the attendant increased work in breathing, which can cause him to cough.
10. Dr. Everett addressed the chronology of plaintiff's disease as it relates to his past smoking and his work around asbestos and its implications for determining the causal factors in plaintiff's disease, while Dr. Hayes did not.
11. Dr. Everett had ample opportunity to observe plaintiff's disease process, and is a pulmonary specialist with expertise in asbestos related lung disease. The Full Commission finds his statements regarding plaintiff's condition and its causes to be credible.
12. There is no evidence in the record apportioning plaintiff's disability between his mild airflow obstruction, probably caused by smoking, and his pulmonary fibrosis, caused by his exposure to asbestos.
13. Plaintiff has an eighth grade education. His work history consists of farming and working for the Caswell Center.
14. Plaintiff has performed no work for pay since his retirement with the exception of the following: (1) he tried to help a man put on vinyl siding but had to quit because he could not do the job; and (2) he went back to the Caswell Center for one month in approximately 1989, to help get in silage, but had to quit because he could not lift the tailgate out of the truck.
15. Since approximately the beginning of plaintiff's retirement, his family has cut the grass for him and tended his garden. Plaintiff cannot still perform any of his past jobs which all required walking around and doing a lot of lifting and carrying. Plaintiff's daily activities are eating, sleeping, and sitting on the front porch of his home. If he tries to walk around the house or up the road, he starts coughing and has to sit down and rest.
16. Defendant presented no evidence regarding plaintiff's wage-earning capacity.
17. Plaintiff was earning an average weekly wage of $427.83 on May 31, 1987, when he retired from the Caswell Center.
 ***********
Based on the foregoing Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The Industrial Commission must make complete findings on all issues upon which the plaintiff's right to compensation depends. Henry v. Leather Company, 231 N.C. 477,57 S.E.2d 760 (1950); Wood v. J.P. Stevens, 297 N.C. 636,256 S.E.2d 692 (1979).
2. "When a claimant becomes incapacitated for work and part of that incapacity is caused, accelerated or aggravated by an occupational disease and the remainder of that incapacity for work is not [so caused], the Workers' Compensation Act of North Carolina requires compensation only for that portion of the disability caused, accelerated, or aggravated by the occupational disease." Stroud v. Caswell Center, 124 N.C. App. 653,657, 478 S.E.2d 234, 237 (1996) (citing Morrison v.Burlington Industries, 304 N.C. 1, 18, 282 S.E.2d 458, 470
(1981).
3. Even if the evidence establishes that a non-work related condition caused part of plaintiff's disability, thus permitting the application of judicial apportionment, if there is no evidence attributing any percentage of plaintiff's total incapacity solely to his compensable injuries, plaintiff is entitled to full compensation. Errante v. Cumberland CountySolid Waste Mgt., 106 N.C. App. 114, 119, 415 S.E.2d 583,586 (1992). If the evidence will permit no apportionment, plaintiff is entitled to an award for his entire disability if his occupational disease was a substantial material factor in bringing about that disability. Harrell v. Harriet Henderson Yarns, 314 N.C. 566, 575, 336 S.E.2d 47, (1985).
4. Plaintiff contracted the occupational disease of asbestosis in the course and scope of his employment with defendant. He has thus far been compensated for 104 weeks at the rate of $285.22 per week pursuant to N.C.G.S. 97-61.5.
5. Plaintiff's severe coughing upon exertion is a substantial material factor in bringing about his inability to sustain employment. There is convincing evidence that plaintiff's severe coughing upon exertion is caused by the asbestos-related fibrotic condition of his lungs. Thus, it is reasonable to conclude that plaintiffs occupational disease is a substantial material factor in bringing about his disability.
6. Taking into account plaintiff's limitations on performing manual labor, his age, his education, and his work experience, plaintiff's disability is total and is likely to be permanent.
7. Plaintiff is entitled to compensation at the rate of $285.22 per week from June 1, 1992 and continuing so long as he remains totally disabled, and is entitled to medical treatment to the extent the same is reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated with plaintiff's occupational disease for the remainder of his life.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay plaintiff, on account of his continuing and total disability, compensation at the rate of $285.22 per week from the period of 1 June 1992 and thereafter, continuing at the same rate so long as he remains totally disabled. Such compensation as has now accrued shall be paid in a lump sum, without commutation, subject to a reasonable attorney fee hereinafter approved. Defendants shall pay interest on the amount of such compensation as had accrued by the date of the hearing below from October 14, 1993 until paid and shall pay interest on all other amounts from the date due until paid. All of the interest is payable to the plaintiff.
2. A reasonable attorney fee in the amount of 33 1/3% of the accrued compensation benefits due under the above award is hereby approved for plaintiff's counsel, which shall be deducted from the award and forwarded directly thereto. Such amount is judged reasonable considering the amount of legal work expended and the complexity thereof. For the balance of the fee, defendant shall forward every fourth compensation check payable hereunder directly to plaintiff's counsel. Going forward, a 25% fee is judged to be reasonable.
3. To the extent the same are reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated with plaintiff's occupational disease, defendant shall pay all reasonable and necessary medical. expenses incurred as a result of the occupational disease when bills for the same are submitted in accordance with the Industrial Commission's procedures.
4. Plaintiff contracted the occupational disease of asbestosis in the course and scope of his employment with defendant. He has thus far been compensated for 104 weeks at the rate of $285.22 per week pursuant to N.C.G.S. § 97-61.5.
5. Plaintiff's severe coughing upon exertion is a substantial material factor in bringing about his inability to sustain employment. There is convincing evidence that plaintiff's severe coughing upon exertion is caused by the asbestos related fibrotic condition of his lungs. Thus, it is reasonable to conclude that plaintiff's occupational disease is a substantial material factor in bringing about his disability, his loss of earning capacity.
6. Taking into account plaintiff's limitations on performing manual labor, his age, his education, and his work experience, plaintiff's disability is total and is likely to be permanent.
7. Plaintiff is entitled to compensation at the rate of $285.22 per week from June 1, 1992 and continuing so long as his loss of earning capacity remains total, and is entitled to continuing medical treatment for the remainder of his life to the extent the same is reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated with plaintiff's occupational disease. Lifetime medical compensation is found to be necessary and reasonable since there is a substantial risk of the necessity of future medical compensation. N.C. Gen. Stat. § 97-25.1.
8. Defendants shall pay the costs.
This 11th day of March 1999.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/_____________ CHRISTOPHER SCOTT COMMISSIONER
S/_____________ DIANNE C. SELLERS COMMISSIONER