SPURGEON W. SMITH, Employee, Plaintiff v. AMERICAN & EFIRD MILLS, Employer, and AETNA LIFE & CASUALTY INSURANCE COMPANY, Carrier, Defendants

No. 160A81

(Filed 4 May 1982)

1. **Master and Servant § 69.1— workers' compensation—permanent total disability—applicable statute**

    Application of the 1978 version of G.S. 97-29 to plaintiff's claim for permanent total disability did not constitute a retroactive application of substantive law in violation of Art. I, § 19 of the N.C. Constitution and Art. I, § 10 of the U.S. Constitution where all the evidence disclosed that, although plaintiff suffered a diminished capacity to earn money in 1970, he did not become disabled until 1978, and thus no right to recover for permanent total disability vested in plaintiff until after the enactment of the 1978 version of G.S. 97-29.

2. **Master and Servant § 75— workers' compensation—partial disability—length of award of medical expenses**

    Under G.S. 97-59 as it existed in 1970, plaintiff was entitled to an award of medical expenses beginning on 1 January 1970 when the Industrial Commission found that his partial disability began and extending so long as the treatment provided "needed relief." Therefore, plaintiff was entitled to recover all medical expenses between 1 January 1970 and the date in 1978 when plaintiff was found to have become totally incapacitated and entitled to medical benefits under G.S. 97-29, and the Industrial Commission erred in limiting the award of medical expenses to the 300 weeks during which partial disability was paid.

    Justice MEYER dissenting.

APPEAL by defendants, employer American & Efird Mills and insurance carrier Aetna Life & Casualty Insurance Company, from the decision of the North Carolina Court of Appeals (*Clark, J.,* with *Martin (Robert M.)* and *Arnold, JJ.,* concurring) reported at 51 N.C. App. 480, 277 S.E. 2d 83 (1981).

The Industrial Commission's award denying benefits to employee-claimant for permanent and total disability under G.S. 97-29 and limiting the recovery of medical expenses to 300 weeks was remanded by the Court of Appeals for findings consistent with the evidence that the employee was entitled to an award under G.S. 97-29 and to lifetime medical expenses under G.S. 97-29 dating from the date when the uncontradicted evidence indicated that he became permanently and totally incapacitated. This Court denied discretionary review on 6 October 1981. The defendants filed petition for rehearing, alleging that this Court had neglected to consider the far-reaching consequences of the decision of the Court of Appeals. Recognizing that this case does present a question of first impression in this State, we elected to entertain defendants' appeal and allowed defendants' petition for discretionary review on 15 December 1981.

The case presents no factual disputes. The claimant worked in the employer's cotton mill for some years prior to 1968 and had had some respiratory problems before that date. In 1968 he was forced to quit his job at the mill due to breathing difficulties. Although he obtained other sedentary employment, his average weekly wages began to decline in 1970 and continued to decline until 1973. Complainant had no earnings for the fourth quarter of 1973, nor for the years 1974, 1975, and 1976. He again had some earnings during each quarter of 1977 but has reported no earnings since the end of 1977.

Smith filed a claim for Workers' Compensation benefits on 8 June 1978. He was examined on 15 September 1978 and determined by Dr. Douglas Kelling to be permanently and totally disabled. The complainant was awarded compensation for 300 weeks dating from 1 January 1970 (the point in time when his average weekly wage shows its first decline) and $8,500 for permanent, irreversible injury to both lungs in an opinion and award filed by Deputy Commissioner Dianne C. Sellers on 4 January 1980. He was also awarded all medical expenses arising out of his occupational disease.

Defendants appealed from the opinion and award of the Deputy Commissioner to the full Commission. The Commission filed an opinion and award on 3 April 1980 by Commissioner Brown (Commissioner Stephenson, concurring; Commissioner Vance, dissenting) limiting the plaintiff's compensation to 300 weeks beginning 1 January 1970 and limiting the award of medical expenses to the same 300-week period.

Plaintiff appealed pursuant to G.S. 97-86.1 which permits an appeal of a portion of the Commission's award. Accordingly, the Commission ordered a lump sum payment of the partial disability compensation, defendants not having appealed that portion of the award. Thus, the only issues before the Court of Appeals were (1) whether the Industrial Commission erred in denying to plaintiff an award under G.S. 97-29 for permanent total disability and (2) whether the Commission erred in limiting plaintiff's recovery of medical expenses to 300 weeks.

The Court of Appeals dismissed plaintiff's appeal for failure to file within 30 days from the date of the full Commission's opinion and award; however, because of the significance of the issues in the appeal, the Court of Appeals issued a writ of certiorari under Appellate Rule 21(a) to review the issues presented by plaintiff. In an opinion by Judge Clark, the Court of Appeals remanded the case to the Industrial Commission for a finding in accordance with all the evidence that plaintiff was permanently and totally disabled in 1978 and for entry of an award of disability compensation under G.S. 97-29 as it existed in 1978 when plaintiff became permanently and totally disabled. The Court of Appeals also held that plaintiff was entitled to medical expenses under G.S. 97-29 for the remainder of plaintiff's life dating from the date of permanent and total disability. We granted discretionary review to review the decision of the Court of Appeals.

*Hassell, Hudson & Lore, by R. James Lore, for plaintiff appellee.*

*Hedrick, Feerick, Eatman, Gardner & Kincheloe, by J. A. Gardner, III, for defendant-appellants.*

BRANCH, Chief Justice.

At the threshold of this opinion, we emphasize that there was no appeal by defendants or plaintiff from the full Commis-

sion's award of permanent partial disability as provided for in G.S. 97-30. Therefore, this portion of the case is not before us, and that award remains in full force and effect.

We approve and adopt as our own the well-reasoned and well-documented decision of the unanimous panel of the Court of Appeals. However, we deem it necessary to consider and decide two points which were not considered in the decision of the Court of Appeals.

I

[1] The Court of Appeals failed to address the question of whether application of the 1978 version of G.S. 97-29 to the facts of the case before us constituted an unconstitutional retroactive application of substantive law.

Defendants argue that when plaintiff suffered "a diminished capacity to earn money" in 1970, his claim vested substantively and his employer was exposed to liability at that time. Defendants therefore contend that to apply the 1978 statute would interfere with vested rights and liabilities so as to contravene Article I, Section 16, of the North Carolina Constitution[1] and Article I, Section 10, of the United States Constitution. We do not agree.

It must be first borne in mind that there is nothing before this Court relating to plaintiff's entitlement under G.S. 97-30 to permanent partial disability compensation for the period 1970 to 1978. The sole question before us in deciding this assignment of error is whether plaintiff's claim for permanent total disability amounted to a retroactive application of the 1978 version of G.S. 97-29. (1973 N.C. Sess. Laws Ch. 1308, §§ 1, 2). In our opinion, *Wood v. Stevens & Co.*, 297 N.C. 636, 256 S.E. 2d 692 (1979), is dispositive of this question and answers it adversely to defendants' contention. In *Wood* Chief Justice Sharp speaking for a unanimous Court (Justice Brock taking no part in the consideration or decision of the case) stated:

---

1. Defendants' argument is in reality based upon Article I, § 19 and not § 16 which is concerned solely with the *ex post facto* application of criminal statutes. We will consider this assignment of error as it relates to Article I, § 19 of our State Constitution.

The proper question for consideration is not whether the amendment affects some imagined obligation of contract but rather whether it interferes with vested rights and liabilities. As we observed in *Booker v. Medical Center*, a statute is not unconstitutionally retroactive merely because it operates on facts which were in existence before its enactment. 297 N.C. at 467, 256 S.E. 2d at 195. *See in accord, Frisbie v. Sunshine Mining Co.*, 93 Idaho 169, 457 P. 2d 408 (1969); *Tennessee Insurance Guaranty Association v. Pack*, 517 S.W. 2d 526 (Tenn. 1974); *Sizemore v. State Workmen's Compensation Commissioner*, 219 S.E. 2d 912 (W.Va. 1975). Instead, a statute is impermissibly retrospective only when it interferes with rights which had vested or liabilities which had accrued prior to its passage. *Spencer v. Motor Co.*, 236 N.C. 239, 72 S.E. 2d 598 (1952); *Wilson v. Anderson*, 232 N.C. 212, 59 S.E. 2d 836 (1950); *B-C Remedy Co. v. Unemployment Compensation Commission*, 226 N.C. 52, 36 S.E. 2d 733 (1946).

*Id.* at 650, 256 S.E. 2d at 701.

All of the evidence in this record discloses that plaintiff did not become totally disabled until 1978. Thus, no right to recover for permanent total disability vested in plaintiff until after the enactment of the 1978 version of G.S. 97-29. No possible liability accrued to defendants as a result of plaintiff's permanent total disability until after the enactment and effective date of the 1973 revision of G.S. 97-29.

We therefore hold that application of the 1978 version of G.S. 97-29 to the facts in instant case did not constitute an unconstitutional application of substantive law.

II

[2] The other question which the Court of Appeals failed to address was whether the Industrial Commission erred in limiting its award of medical expenses in conjunction with the permanent partial award to 300 weeks.

The Commission determined that plaintiff's partial incapacity and entitlement for an award for medical expenses began in 1970. Therefore, consistent with the decision of the Court of Appeals, the award of medical expenses for the period of partial disability must be governed by the pertinent statutes in effect in the year

1970. The full Commission's award in instant case made no reference to the statute under which it made its award. In 1970 G.S. 97-25 and G.S. 97-59 each contained provisions applicable to an employee's entitlement to an award for medical expenses.

G.S. 97-25 is the more general of the two statutes and was first enacted as a part of the original North Carolina Workmen's[2] Compensation Act. 1929 N.C. Sess. Laws Ch. 120. The original act made no provisions for occupational diseases but applied only to injuries by accident. The original provisions of G.S. 97-25 limited allowable medical expenses to ten weeks for treatment "required to effect a cure or give relief and for such additional time as in the judgment of the Commission will tend to lessen the period of disability . . . ."

G.S. 97-59 was enacted in 1935 when the provisions of the Workers' Compensation Act were revised so as to extend coverage for victims of occupational diseases. In 1970 that statute specifically provided:

In the event of disability from an occupational disease, the employer *shall* provide reasonable medical and/or other treatment for such time as in the judgment of the Industrial Commission will tend to lessen the period of disability *or* provide needed relief . . . . [Emphasis added.]

We now turn to the question of which of the statutes is applicable to instant facts.

G.S. 97-25 applies generally to awards of medical benefits under the Workers' Compensation Act. G.S. 97-59, the later enacted statute, applies specifically to awards of medical benefits in cases involving occupational disease.

Where one statute deals with a subject in general terms and another statute deals with a part of the same subject in detail, the specific statute will be construed as controlling, unless it appears that the Legislature intended to make the general act controlling. This is especially so when the specific act is later in point of time.

2. In 1979 the official title of this Act was amended to change the word "Workmen's" to "Workers'." 1979 N.C. Sess. Laws Ch. 714, § 1. For the sake of consistency, references hereafter to the Act will employ the title as it presently reads.

*National Food Stores v. Board of Alcoholic Control*, 268 N.C. 624, 151 S.E. 2d 582 (1966).

We find nothing indicating that the Legislature did not intend that the specific latter statute control. We therefore hold that G.S. 97-59 is applicable to the facts of this case.

The latter specific statute, G.S. 97-59, differs from the former, G.S. 97-25, in that it states two grounds upon which the Commission *shall* extend medical benefits. These grounds are stated in the disjunctive so that if either is found to exist by the Commission, an award for medical benefits must be made. The ground pertinent to this appeal is a finding that the treatment would "tend to provide needed relief." The Commission in its finding of fact number six found "that medical treatment will be necessary for plaintiff's lifetime and will provide plaintiff with needed relief, though treatment will not reverse the damage to the lungs which has become permanent, but will only serve to prevent further damage."

This finding was supported by competent evidence and is therefore conclusive. *Inscoe v. DeRose Industries, Inc.*, 292 N.C. 210, 232 S.E. 2d 449 (1977). Such a finding mandates an award of medical expenses as long as the treatment provides needed relief. Even so, the Commission limited its award of medical expenses to 300 weeks. We are unable to find anything in the Workers' Compensation Act which permits the Commission to limit the award of medical expenses under G.S. 97-59 to the period of time in which disability is paid. Upon finding that the treatment would provide needed relief, it was not necessary under G.S. 97-59 for the Commission to determine that such treatment would also lessen the period of disability.

We therefore hold that plaintiff was entitled to an award of medical expenses beginning in 1970 when the Commission found that his partial disability began and extending so long as the treatment provided "needed relief." Of course, when plaintiff became totally disabled in 1978, he at that time became entitled to medical benefits under the provisions of G.S. 97-29.

We note that G.S. 97-59 requires that "all such treatment shall be first authorized by the Industrial Commission after consulting with the Advisory Medical Commission." Obviously, strict

adherence to this proviso would result in an absurdity in this case by denying plaintiff medical expenses for treatment of his undiagnosed occupational disease because he failed to get prior approval for the treatments. Plaintiff had no reason to seek approval until his condition had been diagnosed as a compensable occupational disease.

In *Taylor v. Stevens & Co.*, 300 N.C. 94, 265 S.E. 2d 144 (1980), we find a similar situation. There we stated, "It is . . . clear that our Legislature never intended that a claimant for workers' compensation benefits would have to make a correct medical diagnosis of his own condition prior to notification by other medical authority of his disease in order to timely make his claim." Although *Taylor* was concerned with a claim for disability compensation rather than a claim for medical expenses, we believe that the same analysis obtains. The Commission may still consult with the Advisory Medical Committee as to the reasonableness of the cost of the treatment. We therefore hold that the requirement in G.S. 97-59 of prior approval of medical treatment applies only in cases where it is reasonably practicable to seek such prior approval. We note in passing that the present version of G.S. 97-59 omits the requirement of *prior* authorization and merely requires that medical bills be approved by the Commission. 1981 N.C. Sess. Laws Ch. 339.

In its opinion and award, the Industrial Commission's Conclusion of Law number three provides:

3. For reasonable medical and/or [sic] treatment, solely of such a nature as to tend to lessen plaintiff's period of disability or to provide plaintiff needed relief from his occupational disease *and incurred during the 300-week period beginning 1 January 1970*, employer is obligated to bear the cost thereof. [Emphasis supplied.]

For the reasons stated above, we hold that the 300-week limitation must be deleted from the opinion and award.

The decision of the Court of Appeals is modified and affirmed, and this cause is remanded to the Court of Appeals with direction that it be returned to the Industrial Commission for entry of award in accordance with the opinion of the Court of Appeals with the sole modification that the limitation contained in

Conclusion of Law number three be deleted so that the amended award will—subject to authorization by the Commission after consultation with the Advisory Medical Committee—allow plaintiff to recover all medical expenses incurred between 1 January 1970 and the date in 1978 when plaintiff is found by the Commission to have become totally incapacitated.

Modified and affirmed.

Justice MEYER dissenting.

I must respectfully dissent from the opinion of the majority. By stipulation of counsel, there is no issue on this appeal contesting the Findings of Fact or Conclusions of Law of the Industrial Commission that plaintiff suffers from an occupational disease. For that reason, no evidence relating to compensability was brought forward in the record—also by agreement of counsel. The defendants did not take exception to or make any cross assignments of error with regard to the Industrial Commission's finding adopting the consulting physician's opinion that plaintiff was totally and permanently disabled from byssinosis in 1978. And, as the majority opinion points out, there is no appeal concerning the award of permanent *partial* disability for the period 1970-1978 pursuant to G.S. § 97-30. While there are other matters which might, and in my opinion should, have been brought forward, this is a limited appeal restricted to (1) the matter of the award of benefits for permanent *total* disability for life under the provisions of G.S. § 97-29 as it existed in 1978 and (2) the award of lifetime medical benefits. I shall therefore limit my remarks to the matter of the retroactive aspect of the award with regard to those two issues. I believe that the award of lifetime permanent total disability benefits to Mr. Smith amounts to a retroactive application of the substantive law—the 1978 version of G.S. § 97-29. I also believe that, under the facts of this case, it is error to award the plaintiff medical expenses for life. I am convinced that neither result was intended by our Legislature.

This is not a situation in which a claimant has previously been determined to be partially disabled and has received, or is receiving, benefits at the time benefits are increased by the Legislature or at the time he becomes totally disabled. This claimant was determined to be disabled for the first time in 1978 at

which time he was found to be totally disabled. It was at this time that his *partial* permanent disability for the period 1970-1978 was determined. While I question such action, this determination was not brought forward on appeal and is not addressed in the majority opinion.

The limited appeal was apparently taken for the reason that while the claimant did not contest the findings and conclusions of the Full Commission relating to the award of benefits under the provisions of G.S. § 97-30 as it existed on 1 January 1970, he did contest the Opinion and Award of the Full Commission in failing to award permanent *partial* benefits under the provisions of G.S. § 97-29 as it existed in 1978 and for its failure to award lifetime medical benefits. The Court of Appeals, however, noted that evidence had been adduced in the case that the claimant became permanently and *totally* disabled in 1978 from byssinosis. The panel thereby concluded that the Full Commission had erred in failing to award benefits for permanent and *total* disability under the version of G.S. § 97-29 as it existed in 1978. The panel determined that the Full Commission was not restricted to that version of G.S. § 97-29 as it existed in 1970 when he first became disabled by reason of his occupational disease. The panel also concluded that the Commission had erred in failing to award lifetime medical benefits under G.S. § 97-29, again, as it existed in 1978, thereby avoiding a construction of G.S. § 97-*59* relating to medical benefits for occupational disease. The panel said that a consideration of benefits that might be awardable under G.S. § 97-*59* was not necessary in view of the provisions of G.S. § 97-29, although the claimant was suffering from an occupational disease.

This claimant was born in 1907. He worked in the textile industry from 1929 to 1951, a period of approximately 21 years. From 1951 to 1962, a period of approximately 11 years, the claimant farmed. He was again employed in the textile industry from 1962 until 1968. Thus, it had been approximately 10 years since he was employed in the textile industry when in 1978 he was diagnosed as being permanently totally disabled by reason of byssinosis.

This is a claim for an occupational disease under G.S. § 97-53(13). It should be emphasized that the pertinent Finding of Fact by the Full Commission with regard to the occupational

disease is couched in the language of the statute as it existed in 1970 and not in the language as it existed in 1978 when the determination was made. This Finding of Fact serves as a foundation for all of the other findings and conclusions and the award. In pertinent part, Finding of Fact No. 1 of the Opinion and Award of the Full Commission provides as follows:

> Byssinosis is a disease which is an infection or inflammation of an internal organ of the body due to exposure to cotton dust.

This finding is only consistent with the language of G.S. § 97-53(13) as it existed prior to the amendment effective 1 July 1971. 1971 Sess. Laws, c. 547, s. 1. Prior to 1 July 1971, G.S. § 97-53(13) provided as follows:

> The following diseases and conditions only shall be deemed to be occupational diseases within the meaning of this article:
>
> .  .  .
>
> (13) Infection or inflammation of the skin, eyes, or other external contact surfaces or oral or nasal cavaties or any other internal or external organ or organs of the body due to irritating oils, cutting compounds, chemical dust, liquids, fumes, gases or vapors, and any other materials or substances.

Following 1 July 1971, G.S. § 97-53(13) as amended, provided as follows:

> The following diseases and conditions only shall be deemed to be occupational diseases within the meaning of this Article:
>
> .  .  .
>
> (13) Any disease, other than hearing loss covered in another subdivision of this section, which is proven to be due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment, but excluding all ordinary diseases of life to which the general public is equally exposed outside of the employment.

The foregoing Finding of Fact No. 1 is entirely adequate to serve as a foundation for an award under the pre-1 July 1971 language of the statute. I would point out, however, that there is

no finding of fact to support a ruling of compensability under the version of G.S. § 97-53(13) as it appears after the amendment of 1 July 1971. Nowhere is there a determination that the claimant's disease is "due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment."

I also point out that from the time of this claimant's partial permanent disability in January 1970 there has been no new injury by accident and no new disablement as a result of a subsequent aggravating exposure to cotton dust to warrant a different accrual date. It was not even alleged that a subsequent occupational exposure or subsequent injury accelerated or aggravated this claimant's condition. It is my view that all of this claimant's benefits should relate back to the original disablement in January 1970. This Court should not put its stamp of approval on an arbitrary finding of a new injury date, *i.e.*, the total disability occurring in 1978, based upon the changing condition of the employee.

In *Wood v. Stevens & Co.*, 297 N.C. 636, 644, 256 S.E. 2d 692, 697-98 (1979), this Court said:

> Under our Workmen's Compensation Act, injury resulting from occupational disease is compensable only when it leads to disablement. G.S. 97-52. Until that time, the employee has no cause of action and the employer has no liability. We hold therefore that the current version of G.S. 97-53(13) *applies to all claims for disablement in which the disability occurs after the statute's effective date, 1 July 1971.*
>
> This holding is consistent with a statutory scheme for occupational diseases as established by G.S. 97-52. . . . *The long-standing rule in both this and other jurisdictions is that the right to compensation in cases of accidental injury is governed by the law in effect at the time of injury.* (Citations omitted.) If disablement resulting from an occupational disease is treated as an injury by accident as required by G.S. 97-52, it follows that the employee's right to compensation in cases of occupational disease should be governed *by the law in effect at the time of disablement.* (Citations omitted) (Emphasis added.)

*Wood* stands for the proposition that the first disablement of any kind (occurring in this case in 1970) brings into play the law

in effect on that date and that all benefits flow and accrue based upon that disablement date.

G.S. § 97-29 as it existed on 1 January 1970 clearly provided that disability benefits would be paid for a maximum of 400 weeks "from the date of the injury." The 1973 amendment to that statute (1973 Session Laws, c. 1308) which eliminated the 400 weeks' cap and the maximum benefits' cap and added lifetime benefits for permanent total disability cases became effective 1 July 1975 and applied only to cases arising on and after 1 July 1975.

I believe that the General Assembly intended the result adopted and incorporated by the Full Commission in its award and that the Court of Appeals and the majority opinion of this Court misinterpret the legislative intent that Mr. Smith's claim should be governed completely and totally by the law in effect on 1 January 1970, the date of his initial disablement. The long legislative history of G.S. § 97-29 clearly establishes a legislative intent that the amendment be applied prospectively only. With one exception, every amendment to G.S. § 97-29 since its adoption has provided that the amendment "shall apply only to cases originating on and after" the effective date of the amendment. *See* 1963 Session Laws, c. 604, s. 9; 1967 Session Laws, c. 84, s. 10; 1969 Session Laws, c. 143, s. 9; 1971 Session Laws, c. 281, s. 7; 1973 Session Laws, c. 515, s. 9; 1973 Session Laws, c. 759, s. 8; 1973 Session Laws, c. 1103, s. 2; and 1973 Session Laws, c. 1308, s. 8. The only exception was the first amendment in 1957 which provided that the amendment applied "on and after July 1, 1957, and shall not apply to injuries occurring before said date." 1957 Session Laws, c. 1217, s. 3.

The wisdom of the Legislature in its intent to apply the amendment now under consideration only prospectively can perhaps be indicated by an example. Assume that a co-worker of this claimant who had worked at the same job and by the claimant's side during his entire employment history became permanently and totally disabled as of 1 January 1970. Assume also, as found by the Commission, that Mr. Smith was only partially disabled as of that same date. The co-worker would have been relegated to the provisions of G.S. § 97-29 as they existed on 1 January 1970 and would have been limited to 400 weeks of com-

pensation at a maximum compensation rate of $50.00 for his *total* disability. Mr. Smith, however, being then only partially disabled, has ultimately obtained benefits payable for his lifetime and in a far greater amount than the co-worker who was disabled permanently and totally for a period at least eight years longer than this claimant. Could the co-worker in 1978, or can he now, reopen his claim on the basis of change of condition and have his claim decided pursuant to the provisions of G.S. § 97-29 as it existed in 1978 or as it exists today? Could the thousands of persons who became only partially disabled in 1970 or prior thereto and whose benefits have been exhausted now apply for current benefits because their condition has changed to a permanent disability? What will the impact be on employers whose current workers' compensation coverage does not extend to these claimants who may have now been separated from their employment for perhaps ten years or more? I fear that the majority opinion will open a Pandora's box of claims never contemplated by the Legislature.

I vote to reverse the decision of the Court of Appeals and reinstate the Award of the Full Commission.