LAURA M. TURNAGE, ADMINISTRATRIX OF THE ESTATE OF JOHN W. TURNAGE, DECEASED v. DACOTAH COTTON MILLS AND LIBERTY MUTUAL IN-SURANCE COMPANY

No. 8510IC188

(Filed 19 November 1985)

Master and Servant § 68— workers' compensation—disability from occupational disease—insufficient evidence

The Industrial Commission properly denied a claim for compensation for occupational obstructive pulmonary disease after claimant's retirement in 1974 where there was evidence that claimant's disability in 1981 resulted from non-occupational health problems, and claimant was unable to present credible evidence that he was disabled due to his occupational disease when he retired in 1974.

APPEAL by plaintiff from the opinion and award of the North Carolina Industrial Commission entered 16 August 1984. Heard in the Court of Appeals 25 September 1985.

*Charles R. Hassell, Jr., for plaintiff appellant.*

*J. Donald Cowan, Jr., and Smith, Moore, Smith, Schell & Hunter, of counsel, for defendant appellees.*

BECTON, Judge.

The plaintiff, Laura M. Turnage, on behalf of the deceased employee, John W. Turnage, appeals from an adverse ruling of the Industrial Commission on Mr. Turnage's workers' compensation claim.

Mr. Turnage began working in the cotton industry in 1920 when he was fourteen years old. He had a seventh grade education. He developed breathing problems during his employment in

the industry, and eventually he developed obstructive pulmonary disease due in part to cotton dust exposure. According to Mr. Turnage, his breathing problems began when he was 45 or 50 years old (1951 to 1956) and gradually worsened until, by age 50 or 55 (1956 to 1961), he would become short of breath just from going shopping. This did not affect his ability to work at that time, and he did not seek treatment for this problem before retiring from textile employment in 1974.

After his retirement, Mr. Turnage developed serious health problems that were not related to his employment. In 1982, his claim for workers' compensation benefits was heard by a deputy commissioner. The evidence presented to the deputy commissioner revealed that Mr. Turnage was diagnosed in 1972 as having arteriosclerotic heart disease with angina pectoris and problems with his legs. Mr. Turnage testified that he quit working in 1974 because he "got so short of breath [and] couldn't hold out for eight hours and do an honest day's work." Dr. Kunstling, who had examined Mr. Turnage in 1981 and 1982, testified that Mr. Turnage suffered from several serious medical conditions including heart disease and chronic bronchitis. He opined that even if Mr. Turnage had perfect lungs, he would be totally disabled due to his age, cardiovascular condition and other problems. Dr. Kunstling also testified that he could not conclude with any degree of medical certainty that Mr. Turnage's disablement, either in 1981 to 1982 or back in 1974, was caused by his occupational disease. He did state, however, that Mr. Turnage would be able to work under certain conditions if he had no medical problems other than his impaired lung function.

The deputy commissioner found, among other things, "Occupational dust exposure was a significant factor contributing to the development of plaintiff's [Mr. Turnage's] obstructive pulmonary disease." She also found as fact:

> Plaintiff's obstructive pulmonary disease has not disabled him to perform work. Plaintiff is disabled due to his non-occupational health problems, but in the absence of these problems he could continue working in the textile industry as long as the dust levels met OSHA standards.

She then concluded as a matter of law that Mr. Turnage had an occupational disease but was not disabled as a result of this

disease. The Industrial Commission reviewed the case and adopted and affirmed the opinion and award of the deputy commissioner. The Commission wrote:

> The Full Commission has carefully considered the record in its entirety. Admittedly, plaintiff has byssinosis. He is 78 years of age. The learned physician who examined him was unable to say with any degree of medical certainty that this employee had any degree of disablement due to his occupational disease, and expressed the opinion that plaintiff would be totally disabled without regard to his occupational disease.

Commissioner Clay dissented:

> In my opinion, the Hearing Officer erred in failing to adequately address and resolve the issue of whether the plaintiff also was disabled from work when his lung disease forced his retirement from the mill in 1974 because he would "give out" before he could do a day's work.
>
> The Deputy Commissioner found that the plaintiff "is disabled due to his non-occupational health problems." These health problems did not develop, however, until several years after plaintiff's breathing problems forced his retirement from the mill.
>
> . . . In [his 1982] report Dr. Kunstling stated: "His obstructive pulmonary disease has developed over many years, but I would date the onset of disability from the time he last worked."
>
>           *     *     *
>
> In my opinion, the greater weight of the evidence supports a finding that the plaintiff was incapable of earning any wages as a result of his occupational disease when he left the mill in 1974.

Plaintiff presents only one issue on appeal: Whether the Commission erred as a matter of law in failing to make a finding as to Mr. Turnage's disability at his retirement in 1974.

There is no question in this case that Mr. Turnage had an occupational lung disease, and he was totally disabled in 1981 after developing non-occupational medical problems. The problem in

Turnage v. Dacotah Cotton Mills

this case arises because plaintiff alleges that Mr. Turnage was disabled in 1974 when he retired, and the evidence in this case relates primarily to his condition in 1981 and 1982. We agree with plaintiff that it is the date of disability upon which the employer's obligations are to be fixed. *See Smith v. American & Efird Mills*, 305 N.C. 507, 290 S.E. 2d 634 (1982); *Taylor v. J. P. Stevens & Co.*, 300 N.C. 94, 265 S.E. 2d 144 (1980); *Wood v. J. P. Stevens & Co.*, 297 N.C. 636, 256 S.E. 2d 692 (1979). Thus, plaintiff argues, evidence of medical conditions subsequent to 1974 is irrelevant, and the Commission has failed to find whether Mr. Turnage was disabled in 1974 as a result of his occupational disease. We disagree.

At the time of the hearing, Mr. Turnage was totally disabled. Thus, the subsequent medical history of Mr. Turnage was relevant to show the cause of Mr. Turnage's disability. Dr. Kunstling testified that Mr. Turnage was totally disabled because of his nonoccupational medical conditions. He also said that if Mr. Turnage did not have any medical problems other than the impaired lung function present in 1981 and 1982 he would be able to continue working in the cotton facility as long as he was monitored and his work area met applicable OSHA cotton dust standards. The deputy commissioner found as a fact that, in the absence of the nonoccupational health problems, Mr. Turnage would have been able to work in the textile industry as long as OSHA dust standards were met. We believe this finding was adequately supported by the evidence. Of course, just because the evidence supports the finding that Mr. Turnage was not suffering from occupational disablement in 1981, it does not necessarily support the finding that he was not occupationally disabled in 1974. Nevertheless, it is the plaintiff's burden to prove that the occupational disease caused the disability. *Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 290 S.E. 2d 682 (1982). The absence of proof to the contrary does not entitle plaintiff to an award.

The evidence was insufficient to prove that Mr. Turnage's occupational disease did, or did not, cause his disablement in 1974. The only evidence pointing in either direction was Mr. Turnage's statement that he retired because of his shortness of breath and leg problems. The medical expert, Dr. Kunstling, specifically declined to express an opinion on this subject because of his inability to draw a conclusion to any degree of medical certainty. Part of the difficulty was the fact that Mr. Turnage suffered two

strokes between 1974 and 1981, and this may have caused the restrictive lung impairment. The Commission's failure to make any findings specifically relating to Mr. Turnage's condition in 1974 is not fatal. It is clear from the record and from the opinion and award that the Commission did not believe Mr. Turnage had presented enough credible evidence to prove he was disabled due to his occupational disease in 1974.

Plaintiff's counsel suggests it is ironic that had Mr. Turnage not been ignorant of his right of action in 1974, he clearly would have recovered. It is true that had Mr. Turnage been cognizant of his claim in 1974, he would have been able to obtain a timely medical opinion as to his then-current disability and its causes. Nonetheless, he may have found that non-occupational factors were the true causes of his disability. Notwithstanding the inherent difficulty of proving causation several years after the fact, the legislature chose to require plaintiffs to prove occupational causation rather than simply prove the existence of an occupational disease. And although we might have weighed the evidence differently, as Commissioner Clay clearly would have done, we are not free to do so in this Court.

For the reasons set forth above, the Industrial Commission's opinion and award is

Affirmed.

Chief Judge HEDRICK and Judge PARKER concur.